94 P.3d 407 (2004)
STATE of Washington, Respondent,
v.
Catherine Christine CASSILL-SKILTON, Appellant.
Nos. 29710-8-II, 29714-1-II.
Court of Appeals of Washington, Division 2.
July 20, 2004.
*408 Kathleen Proctor, Pierce County Prosecuting Atty Ofc, Kathleen Frances Oliver, Prosecuting Atty Ofc, Tacoma, WA, for Respondent.
Sheri Lynn Arnold, Tacoma, WA, for Appellant.
BRIDGEWATER, J.
In this consolidated appeal, Catherine Christine Cassill-Skilton appeals the court's decision to terminate her from the Pierce County Drug Program on the grounds that the termination violated her due process rights. We hold that she was denied due process in the termination because there is no record that she had notice of the violations, no record of a hearing to resolve disputed facts, and no findings (either oral or written) that comply with the reasoning in State v. Marino, 100 Wash.2d 719, 674 P.2d 171 (1984). Therefore, we reverse the decision to terminate and vacate the conviction. Further, although Cassill-Skilton does not contest her convictions of newly charged crimes, we remand those convictions for resentencing because her criminal history changes with the vacation.
The State charged Cassill-Skilton with second degree identity theft, forgery, third degree possession of stolen property, and second degree possession of stolen property in cause number XX-X-XXXXX-X on April 1, 2002. Cassill-Skilton petitioned for admission into the Pierce County Drug Court Program. The court accepted her drug court petition on May 9. Her compliance with treatment deteriorated, being both strained and minimal; she received some jail sanctions for her episodic failures. The prosecutor was concerned that she was manipulating her treatment program by failing to give urinalysis samples. Cassill-Skilton had counsel at all appearances before the drug court.
At Cassill-Skilton's September 17 hearing, the State alerted the court that she had committed a new felony offense. The State wanted the matter set over so that all parties involved could deal with the drug court case, the new charges, and a pending matter in King County Superior Court. The court replied that it would wait for Cassill-Skilton's attorney to make an appearance before deciding Cassill-Skilton's case. The court stated however, that it was inclined to discharge her from the drug court program.
On October 8, Cassill-Skilton appeared again before the court for a hearing. The State wanted Cassill-Skilton discharged from the drug court program because her new charge for second degree identity theft occurred while she was in the program and also because she appeared to be involved in continuous criminal activity. The State further discussed that it did not want the new charges to come into the drug court. Cassill-Skilton also had an open King County case that predated her charges in drug court. Cassill-Skilton's treatment team also strongly recommended her discharge from the program.
Cassill-Skilton requested that she remain in the program pending disposition on another offense. The court gave her new counsel time to complete the King County case and the new charge so that it would not run consecutively with the discharge in the drug court. Under RCW 9.94A.589(3), the court had the discretion to order Cassill-Skilton's punishment from the drug court and her new felony charge to run concurrently or consecutively.
In November, the State amended cause number XX-X-XXXXX-X to include two counts of forgery along with the charge of second degree identity theft. The drug court terminated Cassill-Skilton from the drug court program on November 13.
Cassill-Skilton entered a plea of guilty for cause number XX-X-XXXXX-X, which was for her new crimes of one count of second degree identity theft and two counts of forgery. The court asked Cassill-Skilton whether she *409 gave her plea voluntarily and she replied that she did. The court accepted her guilty plea and the State gave its recommendations for sentencing. After hearing the State's recommendations, Cassill-Skilton questioned the sentence the State requested for the count of second degree identity theft.
Cassill-Skilton's counsel and the court explained to her that the sentence recommendation accounted for her new offense. Because the court was not satisfied that Cassill-Skilton understood her sentence under the plea, it withdrew acceptance of Cassill-Skilton's guilty plea.
On November 18, Cassill-Skilton returned to court for sentencing on cause number XX-X-XXXXX-X from the drug court program and to enter a plea on cause number XX-X-XXXXX-X. This time, the court accepted Cassill-Skilton's guilty plea on cause number XX-X-XXXXX-X. Cassill-Skilton admitted that she knew the standard range was 22-29 months on the forgery charges and 43-57 months on the second degree identity theft. In cause number XX-X-XXXXX-X, the court sentenced Cassill-Skilton to 57 months on the second degree identity theft, 29 months for the forgery count, and 29 months for the count of second degree possession of stolen property. On cause number XX-X-XXXXX-X, the court sentenced Cassill-Skilton to 57 months for the count of second degree identity theft and 29 months each for the two forgery counts.

Due Process Rights
We begin our analysis with State v. Marino, 100 Wash.2d 719, 725, 674 P.2d 171, because it addressed pretrial diversion decisions regarding termination. The court held:
[T]he burden is on the State to prove noncompliance with the agreement by a preponderance of the evidence. These cases conclude that because important constitutional rights have been waived, the accused is entitled to judicial enforcement of the terms of the agreement. United States v. Hicks, [693 F.2d 32, 34-35 (5th Cir.1982), cert. denied, 459 U.S. 1220, 103 S.Ct. 1226, 75 L.Ed.2d 461 (1983)]; In re James, [96 Wash.2d 847, 640 P.2d 18 (1982)].
The similar rights at stake in probation revocation, plea bargain agreements, and pretrial diversions persuade us that appellant is entitled to have factual disputes resolved by a neutral fact finder. This includes an independent determination that the deferred prosecution agreement was violated, by a preponderance of the evidence with the burden of proof on the State. Accord, United States v. Hicks, supra; see State v. Barnes, 37 Conn.Supp. 853, 439 A.2d 456 (1981). This requirement best safeguards the appellant's right to have the agreement administered equitably, with full protection of the constitutional rights relinquished in the bargain. The State is not unduly burdened as it has no interest in proceeding to prosecution in any case unless a violation has, in fact, occurred.
Marino, 100 Wash.2d at 725, 674 P.2d 171.
There are significant distinctions between the diversion agreement in Marino and the agreement here. In Marino, the then governing statute gave the prosecutor discretion to establish the conditions of the program and supervise it. The court noted that:
[I]n probation revocation, a defendant must have the opportunity to be heard by, and present evidence to, a neutral fact finder. The court, as fact finder, [Marino, 100 Wash.2d at 724, 674 P.2d 171] must determine whether the terms of probation have been violated. [State v.] Lawrence, [28 Wash.App. 435] at 438[, 624 P.2d 201 (1981)]. The rationale for this requirement is that deprivation of defendant's liberty cannot comport with due process unless based on verified facts. Morrissey v. Brewer, 408 U.S. 471, 484, 33 L.Ed.2d 484, 92 S.Ct. 2593[, 2601] (1972). Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)[,] applies Morrissey to probation revocation. Together, these cases require the fact finder to make a statement of the evidence relied on and reasons for revoking probation. Lawrence, [28 Wash.App.] at 438 [624 P.2d 201]. The statement facilitates appellate review and assures that the exercise of discretion involved in probation revocation is based on accurate knowledge.
*410 Marino, 100 Wash.2d at 723-24, 674 P.2d 171.
Marino held that the court was to review the prosecutor's actions to terminate based on a reasonableness standard. Marino, 100 Wash.2d at 725, 674 P.2d 171. Marino's holding did not depend on the particulars of the statute or the parties' agreement, apart from the distinctions noted that the conditions and supervision was under the prosecutor. Marino, 100 Wash.2d at 725-26, 674 P.2d 171.
In 1999, the legislature enacted RCW 2.28.170 to provide counties with the opportunity to create drug courts in order to reduce recidivism and assist courts through the diversion of potential offenders away from "`the normal course of criminal trial proceedings.'" State v. Little, 116 Wash.App. 346, 351, 66 P.3d 1099 (quoting LAWS OF 1999, ch. 197, § 7), review denied, 150 Wash.2d 1019, 81 P.3d 119 (2003). Relevant here is the required "intense judicially supervised treatment."[1] Thus, the major distinction between Marino and our case is that we do not review the reasonableness of the prosecutor's decision to terminate the offender, but instead we review the actively supervised treatment and evaluate the violations leading to the offender's termination. The trial court's function in evaluating a termination decision is similar to evaluating alleged probation violations. In all other respects Marino is controlling authority. As in Marino, our decision does not depend on either the statute or the agreement.
RCW 2.28.170 authorizes the creation of drug courts but it contains no provision for operating the program. RCW 10.05.010 et seq. authorizes deferred prosecution and this court can use it for guidance in reviewing a court's obligations at a drug court termination hearing. These statutes apply only by analogy as they relate to deferred prosecution agreements at the district court level. State v. Hayes, 37 Wash.App. 786, 788, 683 P.2d 237, review denied, 102 Wash.2d 1008 (1984). RCW 10.05.090 requires a court to conduct a hearing, after notice, to determine whether to terminate a participant from the program when it receives notice of a breach of a deferred prosecution agreement. The offender is able to present evidence. The punishment for an offender convicted of a similar offense while on deferred prosecution is termination from the program. RCW 10.05.100.[2]
Here, there is no record to show the basis of termination, any opportunity for a hearing on the alleged violations, nor any findings to show what evidence the court relied on in finding an agreement violation. Marino held that, [W]e emphasize, however, that the trial court needs to clearly state the evidence upon which the court relied. Marino, 100 Wash.2d at 727, 674 P.2d 171 (emphasis added). Cassill-Skilton clearly did not receive due process; the termination decision is reversed and the judgment and sentence vacated in cause number XX-X-XXXXX-X, the drug court charges.
We need not address any of the additional grounds for review. We remand for resentencing in cause number XX-X-XXXXX-X.
Reversed and remanded for resentencing consistent with this opinion.
I concur: MORGAN, A.C.J.
VAN DEREN, J. (concurring).
I concur in the result and the reasoning, but write this concurrence to explain more fully the reason I would reverse.
Drug courts combine therapy for drug and alcohol addiction and the law. It is a highly *411 successful approach to an enormous problem faced by society  people committing crimes related to their addiction. This innovation, endorsed by our legislature in enacting RCW 2.28.170, is, as the majority notes, aimed at reducing recidivism and diverting offenders away from the normal consequences of their criminal behavior. But in order to be successful, defendants must engage in treatment and be accountable to the court on a regular basis for their progress toward sobriety.
Drug courts require therapists to diagnose and treat the addiction and to report to the court at each hearing about how the person is doing in treatment. Therapists meet regularly with the members of the drug court team  usually the prosecutor, defense attorney, and other treatment providers, as well as with the defendant who is in drug court. The court holds hearings at regular intervals and for each hearing the treatment providers give progress reports, and the prosecutor and defense counsel discuss recommendations for sanctions or praise. The judge plays a key motivation role, praising success and meting out sanctions for program failure. See Honorable Ricardo S. Martinez, Drug Courts: An Innovative Approach to Drug-Related Crime, Washington State Bar News, November 1997.
But federal and state laws require that drug and alcohol treatment records be kept confidential. 42 U.S.C. § 290dd-2; RCW 70.96A.150. Thus, any record containing a reference to Cassill-Skilton's progress and compliance or discussions with the treatment team or therapists about the consequences of her failure to comply with her treatment goals are unavailable.
There is nothing in the legal record on appeal that indicates Cassill-Skilton was informed: (1) a recommendation to terminate her from the drug court program would be made in November and the basis for the recommendation; (2) the date of the hearing when termination from the program would be decided; and (3) that she had a right to contest both the termination and the alleged violations. Cassill-Skilton maintains on appeal that she never received any such notice.
Further, there is no record reflecting the trial court's findings, which would show what evidence the court relied on to terminate Cassill-Skilton from the drug court program. As the majority states, State v. Marino, 100 Wash.2d 719, 674 P.2d 171 (1984), requires the trial court to clearly state the evidence upon which it relies as the neutral fact finder in termination hearings. The statement may be made orally or in writing. Marino, 100 Wash.2d at 727, 674 P.2d 171.
This lack of a record prevents us from concluding that Cassill-Skilton's due process rights were satisfied.
NOTES
[1] RCW 2.28.170(2) states in part: "For the purposes of this section, `drug court' means a court that has special calendars or dockets designed to achieve a reduction in recidivism and substance abuse among nonviolent, substance abusing offenders by increasing their likelihood for successful rehabilitation through early, continuous, and intense judicially supervised treatment; mandatory periodic drug testing; and the use of appropriate sanctions and other rehabilitation services."
[2] We note that neither the drug court statute nor Cassill-Skilton's agreement contains a condition of termination for conviction of a similar offense; the condition of not violating criminal laws is contained only in the "Conditions of Release During Participation In Drug Court." Clerk's Papers at 82-83.