# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70304-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ALEXANDER SCOTT NICHELIN, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 9, 2014 |

TRICKEY, J. — Alexander Nichelin appeals his convictions for identity theft and possession of stolen property, arguing that the trial court considered undisclosed information at his drug court termination hearing violating his right to due process. Because this claim is based on speculation raised for the first time on appeal, and because the record demonstrates that the trial court relied on evidence presented at the hearing, we affirm.

## FACTS

In July 2011, the State charged Alexander Nichelin with three counts of second degree identity theft and one count of second degree possession of stolen property. On February 29, 2012, Nichelin and the State entered into an Adult Drug Treatment Court (ADTC) agreement. Nichelin agreed to submit the charges to the trial court on a stipulated record for a determination of guilt if he failed to complete the drug court program. The agreement also states:

> I agree that any failure in my treatment program, including, but not limited to: positive urinalysis tests, missed tests or out-of-range urine samples, missed treatment, missed court appearances, any failure to abide by the terms of this agreement, or commission of a new crime, may result in modification of the treatment program, revocation of my pre-trial release, or termination from the ADTC.
>
> . . . .

I must follow the treatment plan as developed by the ADTC Treatment Provider.

. . . .

I agree to abstain from any use or possession of alcohol, drugs, or drug paraphernalia. If any drugs are prescribed for me by a doctor, I will immediately inform my treatment provider and provide the required documentation.[1]

Nichelin also signed a statement of ADTC program expectations. He initialed the following paragraphs:

I am aware that I will be expected to abstain from **all use of alcohol and other drugs**, except medications prescribed by dentist or doctor. Dentists and doctors must be informed of my drug use history and my participation in Drug Treatment Court. Use of all mind and mood altering medication requires completion of the ADTC Medication Form **prior** to use. I am aware that all mind and mood altering substances, poppy seeds, medications (such as Nyquil) which contains alcohol and products containing ephedrine (found in sinus and cold allergy meds & an ingredient in amphetamine and methamphetamine) are not to be consumed while in the program. I am aware that I must show any and all prescribed and over-the-counter medications to have approval from the ADTC Team before taking them.

. . . .

I am aware that I must contact the Drug Court Coordinator or my treatment counselor immediately if I have relapsed. My success in Drug Treatment Court requires me to be honest about any continued use or relapse.[2]

ADTC coordinators also provide program participants with a handbook directing them to "be very careful not to ingest," among other things, "'[n]atural' or herbal remedies or supplements," "[o]ver the counter or prescription medicines without prior approval by [a] treatment provider," and "[a]ny mind or mood altering substances."[3] The handbook continues:

---

[1] Clerk's Papers (CP) at 71-72.
[2] Exhibit (Ex.) 8.
[3] Ex. 6 at 11.

2

If you receive a positive UA [(urinalysis)] result because you ingested one of the above substances without prior approval, it will be treated as a positive UA and you will be sanctioned.

Read labels and ask questions before you put a substance in your body. Claiming that you did not know what was in something **will not** be accepted as an excuse. If you receive a positive UA because you used one of the above and failed to follow the directions of your treatment counselor or the ADTC team, you will receive a sanction or be terminated from the program. **Be aware of what you are putting into your body. If you have questions, ask your treatment counselor FIRST!**[4]

In November 2012, a urinalysis test indicated that Nichelin had used Kratom. The ADTC team decided to terminate Nichelin from the program for (1) using the substance Kratom, and (2) being dishonest with the team about his use of Kratom. Nichelin requested an evidentiary hearing before a judge who was not a member of his ADTC team, according to the provisions of the ADTC agreement.

At a hearing in March 2013, ADTC coordinator Karla Rasmussen testified that she learns of new drugs and substances through professional conferences and her contacts with other drug court coordinators and urinalysis specialists. She testified that "Kratom" is an "addictive" "[m]ind and mood-altering substance" of which the ADTC team had been aware for two years.[5] Rasmussen acknowledged that Kratom "is currently legal" but claimed "it's on the way to becoming illegal."[6] Upon hearing rumors from other program participants that

---

[4] Ex. 6 at 11.
[5] Verbatim Report of Proceedings (VRP) 3/12/13 at 27-28.
[6] VRP 3/12/13 at 55.

3

Nichelin "was involved with Kratom," Rasmussen asked the urinalysis department to test him for it.[7]

According to Rasmussen, when confronted with the positive test, Nichelin initially said that he had used Kratom six months earlier. After she told him that the test only detects use within three to five days, Nichelin admitted recent use and explained that "someone in his doctor's office had recommended Kratom to him as a sleep aid and that he had been having problems sleeping so he took it for that."[8] Rasmussen also identified letters Nichelin had written to each ADTC team member apologizing for his dishonesty regarding his use of Kratom.

Rasmussen testified that honesty "is a critical part of the treatment plan," and dishonesty "might be the number one reason" participants are terminated.[9] She explains to all program participants that there are increasingly serious levels of dishonesty about continued use or relapse that lead to more serious sanctions. For example, Rasmussen noted the differing levels of dishonesty between participants who (1) call the drug coordinator and admit use immediately; (2) admit use to the technician when providing a sample; (3) admit use after being confronted with positive test; and (4) deny use after being confronted with a positive test.[10] Rasmussen also testified that in her view, lying about use of mind or mood-altering substances that "fly underneath drug court's radar" because testing is new, rare, or expensive, is "really egregious" dishonesty.[11]

---

[7] VRP 3/12/13 at 28.
[8] VRP 3/12/13 at 30.
[9] VRP 3/12/13 at 34-36.
[10] VRP 3/12/13 at 34-35.
[11] VRP 3/12/13 at 40-41.

Nichelin presented two witnesses who testified about his progress in therapy and counseling. Nichelin did not present any evidence or testimony to contradict Rasmussen's testimony.

During closing argument, defense counsel suggested that "no one really knows at this point" what Kratom is.[12] The following exchange occurred:

> THE COURT: Would I have the ability to take judicial notice of what I know of Kratom?
>
> [DEFENSE COUNSEL]: You certainly can. And I don't know how much Mr. Nichelin knew at that time. So, Your Honor, I am asking the Court --
>
> THE COURT: Well, do I have the ability to speculate?
>
> [DEFENSE COUNSEL]: I'd ask the Court not to speculate. And I don't know how much the Court actually does know of Kratom, so I'd ask if the Court does take judicial notice that it only be facts of Kratom itself based on some reliable source.[13]

At a hearing two days later, the trial court gave its oral ruling. Without mentioning the concept of judicial notice or identifying any source of information outside the record, the trial court found that (1) Kratom is a mood-altering substance; (2) Nichelin tested positive for use of Kratom; (3) Nichelin knew of the policies, procedures, and expectations of the ADTC team; (4) Nichelin's honesty level regarding his use of Kratom was the lowest; and (5) Nichelin should have considered Kratom a mood-altering substance and requested permission before using it specifically because it was recommended at his doctor's office for the express purpose of altering his mood.

---

[12] VRP 3/12/13 at 77.
[13] VRP 3/12/13 at 77-78.

The trial court entered a written order terminating Nichelin from drug court for the following reasons: "(1) Consuming Kratom on or about 11/1/2012, [and] (2) [d]ishonesty to the court regarding use of Kratom."[14] After finding Nichelin guilty of the original charges based on the stipulated record, the trial court imposed a standard range sentence.

Nichelin appeals.

## ANALYSIS

When seeking to terminate an individual's participation in drug court, the State must prove non-compliance with the drug court diversion agreement by a preponderance of the evidence. State v. Varnell, 137 Wn. App. 925, 929, 155 P.3d 971 (2007) (quoting State v. Marino, 100 Wn.2d 719, 725, 674 P.2d 171 (1984)). In drug court termination proceedings, drug court participants are entitled to the same minimal due process rights required in proceedings involving alleged probation, parole, or conditions of sentence violations. State v. Cassill–Skilton, 122 Wn. App. 652, 656-58, 94 P.3d 407 (2004). Revocation of a suspended sentence or deferred disposition rests within the discretion of the court. State v. Badger, 64 Wn. App. 904, 908, 827 P.2d 318 (1992); State v. J.A., 105 Wn. App. 879, 887, 20 P.3d 487 (2001) (juvenile offender deferred disposition). A decision to terminate participation in a drug diversion court requires a similar exercise of discretion. We therefore review Nichelin's termination from drug court under an abuse of discretion standard.

In Cassill–Skilton, the court held that the State could not terminate drug court participation without (1) giving the defendant an opportunity to contest the

---

[14] CP at 55.

basis of the termination and (2) creating a record of the evidence relied on to terminate participation. 122 Wn. App. at 658. Nichelin does not dispute that he received notice of the alleged violations and had an opportunity to be heard in a recorded proceeding.

Nichelin first contends that the State failed to present any evidence that Kratom is a mind or mood-altering substance other than Rasmussen's "unsubstantiated opinion."[15] But after Nichelin's initial objection regarding the foundation of Rasmussen's knowledge of Kratom, she identified her sources of information and her experience attempting to detect and prevent its use by program participants. Rasmussen then repeated her opinion of Kratom. Nichelin did not object or present any evidence to contradict her testimony. And Nichelin did not dispute Rasmussen's report that Nichelin himself admitted that he took Kratom based on advice from his doctor's office to use it as a sleep aid. The court had discretion to accept or reject Rasmussen's opinion of Kratom, and it did not abuse its discretion by ruling as it did. We do not review the trial court's determinations as to persuasiveness, credibility, and weight of the evidence. See State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Next, for the first time on appeal, Nichelin contends that the trial court erred by taking judicial notice of facts reasonably subject to dispute, specifically, that Kratom is a mind or mood-altering substance. Nichelin claims that the court "appeared to rely on what it knew about Kratom and its own 'cursory search' on the [I]nternet."[16] But the record does not establish that the trial court actually took

---

[15] Brief of Appellant (Br. of App.) at 19.
[16] Br. of App. at 20.

judicial notice of any fact or consulted any outside resource, on the Internet or otherwise. Nichelin relies on statements in the oral ruling that could refer merely to the evidence presented at the hearing and reasonable inferences from that evidence. Because Nichelin did not object, request clarification, or dispute the factual basis for the findings regarding Kratom below, the trial court had no opportunity to address this concern. We therefore decline to speculate whether the trial court consulted information outside the record and will not consider the issue for the first time on appeal. See State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988); RAP 2.5(a).[17]

Moreover, we reject Nichelin's related argument that the trial court failed to clearly state the evidence upon which it relied to determine that Kratom is a mind-altering substance. The trial court's findings are consistent with Rasmussen's uncontroverted testimony, the only evidence presented at the hearing regarding Kratom. And the court explicitly relied on the fact that "the doctor's office made the recommendation for the express purpose of changing his mood, i.e., to deal with his anxiety," to find that Nichelin should have known Kratom was a mood-altering substance and requested approval before using it.[18] Because the record demonstrates that the trial court had ample basis to find that Kratom is a mood-altering substance by a preponderance of the evidence presented at the hearing, and because the trial court explicitly relied on that

---

[17] We also deny Nichelin's motion for this court to consider materials downloaded from the Internet to demonstrate that a "cursory search" would reveal that the purported mind-altering effects of Kratom are reasonably subject to dispute. Because the record demonstrates that the trial court considered and relied upon the evidence presented at the hearing, we need not resolve the question of whether outside sources dispute the effects of Kratom.

[18] VRP 3/14/13 at 5.

evidence, Nichelin fails to establish a violation of his right to due process. <u>See</u> <u>Marino</u>, 100 Wn.2d at 726-27 (where factual disputes are resolved and trial court's decision is based on the evidence, due process is satisfied).

In his statement of additional grounds for review, Nichelin claims that he was treated differently by drug court officials after he reported being sexually assaulted by a laboratory employee while producing a sample for a urinalysis test. He suggests that their knowledge of his potential lawsuit against the laboratory contributed to the ADTC team's initial decision to terminate him from the program. Because Nichelin relies on matters outside the record, a personal restraint petition is the appropriate means to raise such issues. <u>State v. McFarland</u>, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

Affirmed.

WE CONCUR: