# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56472-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| TERRY THEODORE WALKER, | |
| Appellant. | |

CRUSER, A.C.J. — Terry T. Walker was terminated from Thurston County DUI/Drug Court Program (Drug Court) following his termination from the Thurston County Jail Chemical Dependency Program (CDP) that was a requirement of his participation in Drug Court. He argues that he was denied due process at the Drug Court termination hearing because (1) he was not permitted to litigate the propriety of his underlying removal from the CDP by calling witnesses, confronting adverse witnesses, or presenting evidence related to the infractions that led to his termination from the CDP, and (2) the superior court did not enter written findings of fact and conclusions of law related to its termination decision.[1] He further argues that the superior court erred when it did not specify that the restitution debt, the interest on the restitution debt, and the victim assessment fee it had imposed could not be satisfied by his Social Security benefits under

---

[1] In his issue statements, Walker also asserts that he was not provided with adequate notice of the Drug Court termination proceedings, Br. of Appellant at 3 (Issue 1). But Walker presents no argument related to this issue, so we do not address it. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

the federal anti-attachment provision of the Social Security Act, 42 U.S.C. § 407(a). Lastly, Walker argues that the superior court erred when it failed to waive the interest accrual provision imposing interest on the restitution debt.

We hold that Walker's due process arguments fail, and we affirm the superior court order terminating Walker from Drug Court. We also affirm the interest provision with respect to restitution. But we remand this matter to the superior court to amend the judgment and sentence to include a notation that prohibits collection of the legal financial obligations (LFOs), restitution, and interest on restitution from Walker's Social Security benefits.

FACTS

I. BACKGROUND

A. ARREST AND DRUG COURT CONTRACT

On January 28, 2021, Walker was arrested while in possession of a stolen motor vehicle. The State charged him with possession of a stolen motor vehicle.

At the time of the January 2021 arrest, Walker was on probation for a district court matter. In light of the arrest, Walker was taken into custody for that offense in February 2021. To resolve the misdemeanor matter, the district court imposed the remainder of Walker's suspended sentence and approved Walker for the CDP at the Thurston County Jail.

A couple of weeks later in superior court, Walker entered into a Drug Court contract to resolve the felony charge. The Drug Court contract required Walker "[t]o complete all program services and requirements as ordered and to the satisfaction of the Drug Court Team." Clerk's Papers (CP) at 10. And it stated that any failure to comply with the terms and conditions of the

Drug Court contract exposed Walker a variety of sanctions "up to and including termination from the [Drug Court] program." CP at 11.

The Drug Court contract provided that if Walker successfully completed the Drug Court program, the State would dismiss the felony charge with prejudice. But if the superior court terminated Walker from the program, the superior court was allowed to determine the issue of guilt on the charges based on law enforcement reports and declarations, witness statements, field and lab test results, or other expert testing or examination. Walker agreed to stipulate that the facts presented by such evidence were sufficient for the superior court to find him guilty of the charges.

On the same day, the superior court also issued an "order for participation in CDP as a requirement of the . . . Drug Court program." CP at 14 (some capitalization omitted). This order stated that Walker "shall successfully complete Phase I and II of the jail CDP" as part of the Drug Court program. CP at 14. The order advised Walker that failure to abide by all jail, CDP, and Drug Court rules could result in disciplinary action that could include termination from the Drug Court program.

B. INFRACTIONS AND TERMINATION FROM CDP

Not long after entering the jail's CDP, Walker pled guilty to and was infracted for drug use. As a result of the drug use infraction, Walker entered into a behavioral contract with the CDP that required him to comply with all CDP rules at the risk of being terminated from the CDP.

Within two months, Walker was terminated from the CDP for violating the behavioral contract by being infracted for three non-drug-related infractions. These infractions were for (1) "horseplay," (2) "[c]ommunicating/[s]ignaling [i]nmates in other housing units" by blowing a kiss to a female inmate, and (3) a violation of [inmate] worker agreement." CP at 57, 59, 64, 66.

3

## II. TERMINATION FROM DRUG COURT

### A. PRE-HEARING MOTIONS

The State moved to terminate the Drug Court contract based on the CDP termination.

Before the Drug Court termination hearing, Walker's counsel provided the State with a list of witnesses that Walker intended to call at the termination hearing.[2] The State moved to preclude these witnesses from testifying or to limit their testimony to the fact Walker entered the CDP, the fact he signed a contract that required successful completion of the CDP "in order to transition into Drug Court," and whether Walker successfully completed the CDP or was terminated from the program. CP at 18. The State argued that Walker's proposed witnesses were being offered to provide other evidence about the CDP and that this additional evidence was irrelevant.

A few days later, Walker filed a memorandum asking the superior court to allow him to continue to participate in Drug Court despite his termination from the CDP. He admitted that his participation in the CDP had been terminated due to the three infractions he incurred after entering into the behavioral contract. But he argued that the "minor incidents," which he characterized as "behavioral issues," should not prevent him from continuing in the Drug Court program after his release from jail. CP at 27-28. Walker asserted that this was particularly true because "[t]he actions for which [he] was sanctioned for in CDP are not behaviors Drug Court would likely scrutinize in

---

[2] The list the State referred to is not part of our record, but the State asserted that Walker had sought testimony from Jill Patrick, his counselor; a mental health medication prescriber; a friend who could provide support if Walker was released; Sabrina Craig, the CDP program director; and Lieutenant Stephanie Klein. The State did not describe any of the proposed testimony from these witness as relating to the disciplinary infraction process.

4

the regular, out of custody Drug Court context," and that he was under a microscope in CDP, and the issues that eventually got him terminated "were de minim[i]s in nature." CP at 28.

Walker at no point asserted that he had not committed any of the three infractions that led to his termination from the CDP. And he did not argue that the superior court could not terminate his Drug Court participation without first finding that he had committed these infractions by a preponderance of the evidence.[3] Instead, Walker "respectfully request[ed] that the [superior court] hold a full and fair hearing to determine if [he] should be terminated from drug court solely because he was terminated from CDP." CP at 23. And he asked the superior court "to consider the factors underlying his termination from CDP and take into consideration that those factors do not automatically support the proposition that he would be unsuccessful in Drug Court going forward." CP at 28.

In this motion, Walker also described the testimony his proposed witnesses would have presented. The only potential testimony that described any of the infractions would come from Lieutenant Stephanie Klein and Walker. Walker asserted that Klein, who "oversees" the jail's CDP, would testify that Walker had received the three relevant infractions. CP at 24. But Klein would only testify about the facts underlying the third infraction for violating the inmate worker agreement by not working for a short period of time during which Walker claimed medication

---

[3] Walker did cite to *State v. Cassill-Skilton*, 122 Wn. App. 652, 657, 94 P.3d 407 (2004), to support the following statement, "In the context of drug court termination, the court's role is to 'review the actively supervised treatment and evaluate the violations leading to the offender's termination.'" CP at 23. But Walker did not argue that under *Cassill-Skilton*, the superior court had to independently determine whether each of the three infractions was supported by a preponderance of the evidence.

issues had made him tired. Walker did not state that Klein would provide any testimony about the infraction process.

Walker also described the testimony he would present. His proposed testimony was "about his mental health issues" and the medications he was on while in the CDP. CP at 27.

B. DRUG COURT TERMINATION HEARING

At the Drug Court termination hearing, the superior court first addressed whether Walker was conceding that he had been terminated from the CDP and, if so, whether a full evidentiary hearing was still needed since the termination from Drug Court would be based on Walker's termination from the CDP.

Walker's counsel responded that Walker was not contesting that he had been terminated from the CDP, noting that this was "an agreed fact." Report of Proceedings (RP) at 12. She stated that she was, instead, arguing that the Drug Court contract did not state that the only sanction for failing to complete the CDP was termination from Drug Court and that the superior court had the discretion to impose other sanctions. Walker's counsel argued that, in light of that discretion, an evidentiary hearing was necessary to allow the superior court "to review the actively supervised treatment and evaluate the violations leading to [Walker's] termination" before terminating him from Drug Court. RP at 12. Counsel also asserted that the superior court should hear evidence that would allow it to determine whether Walker could succeed in the Drug Court program once he was out of custody given the differences in the requirements, rules, and programs, particularly when the CDP's requirements and rules were not the same as the Drug Court's requirements and rules.

Counsel concluded that "the crux of [Walker's] argument" was that his termination from CDP due to behavioral issues should not preclude him having the opportunity to show he could successfully complete Drug Court while out of custody. RP at 12-13 When the superior court again asked Walker's counsel if she was arguing that the court "exercise its discretion and not sanction by terminating [Walker] from Drug Court," Walker's counsel responded that the court should examine the circumstances leading to his termination from the CDP and the degree to which he successfully participated in the program. RP at 16. Acknowledging that the State was arguing that Walker's failure to complete the CDP was a breach of contract, counsel argued that Walker had "substantial[ly] compli[ed]" with the treatment program and that his termination was based on "behaviors that were outside of treatment." RP at 16. Counsel asserted that Walker's behavioral issues while in jail should not preclude him from continuing to participate in Drug Court once he was out of custody.

The superior court concluded that Walker had "stipulated" that he had been terminated from the CDP and again asked Walker's counsel what the appropriate sanction would be for Walker's failure to comply with the contractual requirement that he "would successfully complete [the] CDP." RP at 17-18. Walker's counsel responded by requesting a "full hearing" so the court could consider the reasons Walker was terminated from the CDP and his successes while in CDP before determining whether Walker could continue in Drug Court once he was out of custody. RP at 18.

Walker's counsel at no point argued that the State should be required to prove the infractions that led to Walker's termination from the CDP by a preponderance of the evidence.

Nor did she argue that Walker had not received adequate due process before he received the infractions.

The superior court concluded that a full evidentiary hearing was not required because Walker was not disputing he had been terminated from the CDP. But it permitted Walker to testify in support of his argument that he should be able to remain in Drug Court despite his termination from the CDP.

Walker testified about his mental health, how his mental health medications affected him, how stressful he found jail in light of his mental health conditions, the facts related to his drug-use infraction, and how he hoped to remain in the Drug Court program so he could obtain treatment. He also testified that he believed he would be more successful outside of the jail setting because he could "just isolate and focus on [his] recovery work and [his] faith." RP at 50. Walker did not allege any deficiencies in the infraction process. Walker also testified that although he hoped to eventually get a job, he would initially support himself on "Social [S]ecurity" income and that he was "considered disabled by [S]ocial [S]ecurity." RP at 50-51.

After hearing Walker's testimony, the superior court gave an extensive oral ruling and terminated Walker from Drug Court. In its oral ruling the superior court emphasized that although it recognized that it had the discretion to permit Walker to remain in Drug Court, termination from Drug Court was appropriate in light of his inability to complete the CDP. The superior court's written order terminating Walker from Drug Court stated that the superior court's decision was "based on the findings entered orally by [the] Court." CP at 71.

8

C. RECONSIDERATION

Walker moved for reconsideration. Walker's counsel's main contentions were that (1) the CDP termination process did not comply with due process, (2) Walker's "termination from [the] CDP was based on conduct that did not, in fact, violate jail rules," and (3) the State had to prove the underlying infractions that led to his termination from the CDP by a preponderance of the evidence at the Drug Court termination hearing. CP at 77-78. But counsel did not allege that the infractions had not been found by a preponderance of the evidence *at the infraction hearings*.

Walker's counsel stated that she was seeking reconsideration because she did not "feel that [she] did an adequate job" of raising the due process issues at the Drug Court termination hearing. RP at 79. Counsel asked the superior court to reverse its ruling and allow an evidentiary hearing at which the State would be required to prove the infractions and Walker could present evidence and cross-examine the State's witnesses. The superior court denied the motion for reconsideration.

After the superior court made this oral ruling, Walker's counsel asked the court if it intended to sign written findings of fact and conclusions of law from the Drug Court termination hearing. The superior court stated that its order terminating Walker's Drug Court participation was sufficient and declined to enter additional written findings of fact and conclusions of law.

III. STIPULATED FACTS BENCH TRIAL AND SENTENCING

After reviewing the declaration of probable cause and the police reports and hearing argument, the superior court found Walker guilty of possession of a stolen vehicle. The superior court then turned to sentencing.

The State argued that in addition to the sentence, the court should also impose $281.51 in restitution and "no more than [the] mandatory minimum LFOs of $500." RP at 113. The court

9

imposed a Drug Offender Sentencing Alternative[4] and ordered Walker to pay restitution and a $500 crime victim's assessment. During the sentencing hearing no one requested that the LFOs or restitution orders be restricted in any way, and Walker's financial situation was not discussed.

In the judgment and sentence, the superior court imposed a $500 victim assessment and $281.50 in restitution. The judgment and sentence also stated that "[t]he restitution obligations imposed in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments. No interest shall accrue on non-restitution obligations imposed in this judgment. RCW 10.82.090." CP at 100. But the judgment and sentence did not state whether the victim assessment or the restitution, or the interest on those amounts, could be paid from Social Security income.

Walker appeals. In his motion for order of indigency, Walker certified that when he was not incarcerated his income consisted of $950 a month in Social Security disability income.

ANALYSIS

I. DUE PROCESS

Walker first argues that he was denied due process at the Drug Court termination hearing because (1) he was not permitted to call witnesses, confront adverse witnesses, or present evidence related to the three infractions that resulted in his termination from the CDP, and (2) the superior court did not enter written findings of fact and conclusions of law related to its termination decision. Walker does not dispute that he was terminated from the CDP. Nor does he assert that

---

[4] RCW 9.94A.660.

he was not found guilty of the three infractions that led to his termination from the CDP by a preponderance of the evidence.

A. LEGAL PRINCIPLES

"A person claiming a due process violation has the burden of proof." *State v. Conway*, 8 Wn. App. 2d 538, 553, 438 P.3d 1235, *review denied*, 194 Wn.2d 1010 (2019). "Due process guarantees apply in drug court revocation proceedings." *State v. Harrison*, ___ Wn. App. 2d ___, 519 P.3d 244, 249 (2022) (citing *State v. Cassill-Skilton*, 122 Wn. App. 652, 653, 94 P.3d 407 (2004)). "Procedural due process requires that an individual receive 'adequate notice of the deprivation [of a protected interest] and a meaningful opportunity to be heard.' " *Id.* at 249 (quoting *State v. Beaver*, 184 Wn.2d 321, 336, 358 P.3d 385 (2015)).

In the context of drug court termination proceedings, due process includes " 'an independent determination that the deferred prosecution agreement was violated, by a preponderance of the evidence with the burden of proof on the State.' " *Cassill-Skilton*, 122 Wn. App. at 656 (quoting *State v. Marino*, 100 Wn.2d 719, 725, 674 P.2d 171 (1984), *overruled in part on other grounds by State v. Dent*, 123 Wn.2d 467, 497, 869 P.2d 392 (1994)). This further includes the right to a hearing "in which the defendant is entitled to present evidence." *Harrison*, 519 P.3d at 249 (citing *Cassill-Skilton*, 122 Wn. App. at 658). Additionally, the trial court is required " 'to clearly state the evidence upon which the court relied.' " *Id.* (internal quotation marks omitted) (quoting *Cassill-Skilton*, 122 Wn. App. at 658).

B. EVIDENTIARY HEARING TO PROVE THE UNDERLYING INFRACTIONS

Relying on *Cassill-Skilton* and *In re Personal Restraint of Schley*, 191 Wn.2d 278, 421 P.3d 951 (2018), Walker argues that he was denied due process because the superior court refused

to conduct an "evidentiary hearing on the underlying allegations" supporting the "alleged infractions." Br. of Appellant at 14. He asserts that due process required that he be allowed "to present [evidence] and to confront witnesses as to the allegations that he 1) blew a kiss to a female inmate; 2) engaged in 'horseplay;' and 3) [violated the worker inmate agreement]."[5] Br. of Appellant at 14.

Walker's reliance on *Cassill-Skilton* is not persuasive. *Cassill-Skilton* requires only that the State prove the non-compliance with the drug court agreement. 122 Wn. App. at 658. And in *Cassill-Skilton* there was no record establishing that the defendant had "any opportunity for a hearing on the alleged" violations of the drug court agreement.[6] *Id*. Here, in contrast, Walker had an opportunity for a hearing on the violation that led to the Drug Court termination—his termination from the CDP.

Furthermore, in *Cassill-Skilton* the alleged Drug Court violations had not been proved in any manner before the drug court termination. *Id*. Here, in contrast, Walker does not contend that the infractions that were the basis of the CDP termination were not proven in disciplinary proceedings at the jail by a preponderance of the evidence. And *Cassill-Skilton* does not suggest that due process also requires evidentiary hearings to reexamine the basis of founded infractions.

---

[5] In his brief, Walker asserts that he was entitled to present evidence and confront witnesses related to the allegations that he "lied." Br. of Appellant at 14. But Walker was found not guilty of the lying infraction. We presume he intended to refer to the infraction for violating the worker inmate agreement, which was the third infraction that led to him being terminated from the CDP for not complying with the behavioral contract.

[6] These violations were the commission of a new felony offense while participating in the drug court program and an allegation that the defendant was "involved in continuous criminal activity." *Cassill-Skilton*, 122 Wn. App. at 654.

12

*Schley* is also inapposite. In *Schley*, the Department of Corrections (DOC) revoked a defendant's drug offender sentencing alternative (DOSA) following the defendant's termination from a prison drug treatment program due to a fighting infraction. 191 Wn.2d at 282. The fighting infraction had been proved under the "some evidence" standard prior to the treatment termination. *Id.* The DOC hearing officer refused to allow the defendant to challenge the fighting infraction at the revocation hearing after concluding "that the only issue before [the hearing officer] was whether [the defendant] had been administratively terminated from treatment." *Id.*

On appeal, our Supreme Court examined "whether due process require[d] the [DOC] to prove an infraction underlying a treatment termination decision by a preponderance of the evidence in order to revoke a DOSA." *Id.* at 285. The court rejected the DOC's argument "that treatment termination [was] the only fact at issue at revocation" and that the underlying reasons for termination need not be examined at the revocation hearing. *Id.* at 288. Instead, the court held that when the reason for the treatment termination was based on an infraction that was proven under the "some evidence" standard, rather than by the preponderance of the evidence standard that applied at the DOSA revocation hearing, then due process required that the DOC prove the underlying infractions by a preponderance of the evidence at the DOSA revocation hearing. *Id.* at 289.

*Schley* does not stand for the proposition that *all* infractions that lead to the termination of treatment must be reexamined in a revocation hearing. *Schley* requires only that the infractions that lead to the termination of treatment must be proved under the preponderance of the evidence standard, rather than under the some evidence standard, before they can provide a basis for treatment termination and a subsequent DOSA revocation. *Id.* Here, however, Walker did not

13

assert below, nor does he assert here, that the three relevant infractions were not proved by a preponderance of the evidence prior to the Drug Court revocation hearing. Thus, even assuming that *Schely* applies to drug court proceedings, Walker does not establish a due process violation.

C. FINDINGS

Walker next argues that he was denied due process because the superior court did not enter written findings of fact and conclusions of law supporting its termination of Walker's participation in Drug Court. But Walker cites no authority requiring the superior court to enter written findings of fact and conclusions of law or prohibiting the superior court from adopting its oral ruling in its final order terminating a defendant's Drug Court participation. *State v. Arredondo*, 188 Wn.2d 244, 262, 394 P.3d 348 (2017) (if the appellant does not provide any support for his or her argument, we may assume none exists). And case law addressing the termination of other types of diversion agreements establishes that the trial court's findings can be oral or in writing. *Marino*, 100 Wn.2d at 727. Accordingly, this argument fails.

II. RESTITUTION AND LFOs

A. ANTI-ATTACHMENT PROVISION

Walker next argues that the superior court erred when it did not specify that the restitution debt, the interest on the restitution debt, and the victim assessment fee could not be satisfied by his Social Security benefits under the federal anti-attachment provision of the Social Security Act, 42 U.S.C. § 407(a). The State agrees that Walker's LFOs and restitution cannot be satisfied from his Social Security benefits and does "not oppose remand for the sole purpose of entering an amendment to the judgment and sentence clarifying that the legal financial obligations cannot be satisfied with social security income." Br. of Resp't at 24-25 (emphasis omitted).

The federal anti-attachment "provision requires that Social Security moneys cannot be reached to satisfy a debt." *State v. Catling*, 193 Wn.2d 252, 260, 438 P.3d 1174 (2019). Walker testified under oath that he received Social Security payments, and he also certified the same in writing. Accordingly, we agree with the State that remand of this matter back to the superior court to amend the judgment and sentence to include a notation that prohibits collection of the LFOs, restitution, and interest on restitution from Walker's Social Security benefits is appropriate.

B. INTEREST ACCRUAL PROVISION

Finally, Walker argues that the superior court erred when it failed to waive the interest accrual provision imposing interest on the restitution debt. He argues that interest accrual on the restitution debt should not be allowed "[f]or the same reasons the *Blazina*[7]Court found it unconscionable to charge interest to the destitute for outstanding court fees." Br. of Appellant at 26. Walker's argument is not persuasive in light of the statute governing interest on restitution.

Former RCW 10.82.090 (2018) provided, in part,

(1) Except as provided in subsection (2) of this section, *restitution imposed in a judgment shall bear interest* from the date of the judgment until payment, at the rate applicable to civil judgments. As of June 7, 2018, no interest shall accrue on nonrestitution legal financial obligations. . . .

(2) The court may, on motion by the offender, following the offender's release from total confinement, reduce or waive the interest on legal financial obligations levied as a result of a criminal conviction as follows:

(a) The court shall waive all interest on the portions of the legal financial obligations that are not restitution that accrued prior to June 7, 2018;

(b) The court *may reduce interest on the restitution portion of the legal financial obligations only if the principal has been paid in full and as an incentive for the offender to meet his or her other legal financial obligations*.

---

[7] *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

Former RCW 10.82.090(1) and (2)(b) required the superior court to impose interest on the restitution unless Walker has paid the restitution in full. Although this interest will certainly be a financial burden on Walker, we cannot ignore the legislature's directive.[8]

And Walker's reliance on *Blazina* is not persuasive because *Blazina* addressed discretionary LFOs, but the interest on restitution is required under RCW 10.82.090(1) so the court here had no discretion. 182 Wn.2d at 830. Because the superior court did not have discretion, *Blazina* is inapposite, and Walker's argument that the superior court should have waived interest on the restitution fails. However, Walker can seek to have interest on restitution reduced once he has paid the principal in full. RCW 10.82.090(3)(c).

## CONCLUSION

We affirm the superior court order terminating Walker from Drug Court and affirm the interest provision with respect to restitution. But we remand this matter to the superior court to amend the judgment and sentence to include a notation that prohibits collection of the LFOs, interest, and restitution from Walker's Social Security benefits.

---

[8] In 2022, the legislature amended RCW 10.82.090 to allow the superior court to "elect not to impose interest on any restitution the court orders" under certain circumstances. Laws of 2022, ch. 260, § 12. But this amendment is not effective until January 1, 2023.

No. 56472-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
CRUSER, A.C.J.

We concur:

_____
GLASGOW, J.

_____
MAXA, J.