# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47916-8-II |
| Respondent, | |
| v. | |
| KENNETH ALFRED LINVILLE, JR., | PART PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Kenneth Linville Jr. appeals his convictions for leading organized crime, burglary, trafficking in stolen property, theft, possession of stolen property, unlawful firearm possession, and possession of controlled substances. Linville was convicted of 137 crimes.

In the published portion of this opinion, we hold that Linville's counsel rendered ineffective assistance by failing to object to the improper joinder of charges, and, consequently, we reverse Linville's convictions and remand for separate trials. In the unpublished portion of this opinion, we further hold that the State produced sufficient evidence to support the first degree burglary convictions. We do not address Linville's other arguments.[1]

---

[1] Linville additionally argues that (1) a conviction based on the first alternative means of trafficking in stolen property cannot rest on accomplice liability, (2) insufficient evidence supported the firearm sentencing enhancements, (3) his right to a unanimous jury verdict was violated because the jury was instructed that it need not be unanimous as to the means by which it found him guilty of trafficking in stolen property, (4) his multiple convictions for trafficking in stolen property violated the prohibition against double jeopardy, and (5) the trial court denied his right to due process by permitting the State to amend the charging information after the State rested its case.

FACTS

Following an increase in residential burglaries in Thurston County, law enforcement officers noticed similarities among several burglaries. Officers ultimately recovered numerous items taken during the burglaries from Linville's home.

The State charged Linville with 1 count of leading organized crime, 35 counts of residential burglary, 1 count of attempted residential burglary, 4 counts of first degree burglary, 3 counts of second degree burglary, 39 counts of trafficking in stolen property, 17 counts of first degree theft, 18 counts of second degree theft, 1 count of attempted second degree theft, 3 counts of third degree theft, 5 counts of theft of a firearm, 5 counts of identity theft, 4 counts of unlawful possession of a firearm, 1 count of possession of stolen property, and 1 count of possession of a controlled substance, for a total of 138 charges with numerous deadly weapon sentencing enhancements.[2,3] The State alleged that Linville was armed with a firearm during the commission of the four first degree burglaries.[4] At no point did Linville argue that joinder of any offenses was improper under RCW 9A.82.085.

During the jury trial, the State presented testimony from numerous co-defendants who identified Linville as the instigator and leader of the burglary scheme. The co-defendants'

---

[2] On all charges except leading organized crime, Linville was charged either as a principal or as an accomplice. Linville never objected to being charged as a principal or as an accomplice.

[3] The deadly weapon sentencing enhancements were based on Linville's use of a pry bar during the burglaries.

[4] The four firearm sentencing enhancements were based on firearms Linville stole during the first degree burglaries.

testimony was corroborated by law enforcement officers and victims who described the common characteristics among the burglaries and identified stolen goods recovered from the homes of Linville and his co-defendants.[5]

The jury found Linville guilty of 137 offenses,[6] and he was sentenced to 914 months in prison, which included 240 months for four firearm sentencing enhancements. Linville appeals.

ANALYSIS

Linville argues that his counsel rendered ineffective assistance by failing to move for severance of offenses that were not "part of the pattern of criminal profiteering activity" from the charge of leading organized crime under RCW 9A.82.085.[7,8] Br. of Appellant 17. We agree.

The Sixth Amendment guarantees the effective assistance of counsel in criminal proceedings. To show ineffective assistance of counsel, a defendant must show that (1) defense

---

[5] Specifically, witnesses testified regarding four burglaries during which Linville and his accomplices stole firearms.

[6] The jury found Linville not guilty of possession of a controlled substance and found that the State failed to prove the deadly weapon enhancements based on Linville's use of the pry bar.

[7] Linville also argues that this court should review the improper joinder of these offenses independently of the ineffective assistance of counsel context because "RCW 9A.82.085 represents a legislative conclusion that a joint trial for leading organized crime and offenses which do not constitute a part of the pattern of criminal profiteering activity is manifestly unfair," and "[a] manifestly unfair trial deprives a defendant of due process in violation of the Fourteenth Amendment." Br. of Appellant 17 (citing *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984)). However, Linville fails to show that the issue affects a constitutional right, thus we address whether the alleged improper joinder is reversible error only in the context of ineffective assistance of counsel.

[8] Linville also argues that the State was required to specifically designate which offenses were "part of the pattern of criminal profiteering activity" in the charging information in order to join them to a trial for leading organized crime and that his counsel rendered deficient performance for failing to object to the information. Br. of Appellant 10, 17. Because we otherwise reverse and remand we do not address this argument.

counsel's conduct was deficient, and (2) the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To show deficient performance, Linville must show that defense counsel's performance fell below an objective standard of reasonableness. *Reichenbach*, 153 Wn.2d at 130. To show prejudice, Linville must show a reasonable possibility that, but for counsel's purportedly deficient conduct, the outcome of the proceeding would have differed. *Reichenbach*, 153 Wn.2d at 130. We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

  1. *Counsel Rendered Deficient Performance*

  Linville argues that the plain language of RCW 9A.82.085 prohibits the joinder of crimes not "alleged to be part of the pattern of criminal profiteering activity" to a prosecution for leading organized crime, and therefore, defense counsel rendered deficient performance by not objecting to the joinder of charges not included in the definition of "criminal profiteering." Br. of Appellant 17. We agree.

  We review the meaning of a statute de novo. *State v. Wooten*, 178 Wn.2d 890, 895, 312 P.3d 41 (2013). We employ statutory interpretation to determine and give effect to the legislature's intent. *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). To determine legislative intent, we first look to the plain language of the statute considering the text of the provision in question, the context of the statute, and the statutory scheme as a whole. *Evans*, 177 Wn.2d at 192.

No. 47916-8-II

RCW 9A.82.085 states, in relevant part:

In a criminal prosecution alleging a violation of [leading organized crime], the state is barred from joining any offense other than the offenses alleged to be part of the pattern of criminal profiteering activity.

RCW 9A.82.010(12) defines "pattern of criminal profiteering activity" as "engaging in at least three acts of criminal profiteering."

RCW 9A.82.010(4) defines "criminal profiteering" as:

any act, including any anticipatory or completed offense, committed for financial gain, that is chargeable or indictable under the laws of the state in which the act occurred and, if the act occurred in a state other than this state, would be chargeable or indictable under the laws of this state had the act occurred in this state and punishable as a felony and by imprisonment for more than one year, regardless of whether the act is charged or indicted, as any of the following: . . . .

RCW 9A.82.010(4) then lists 46 crimes and their defining statutes. First and second degree theft, trafficking in stolen property, leading organized crime, and identity theft are included in the list. *See* RCW 9A.82.010(4)(e), (r), (s), and (kk). However, residential burglary, first degree burglary, second degree burglary, attempted residential burglary, theft of a firearm, third degree theft, unlawful possession of a firearm, and possession of stolen property are not included in the list. *See* RCW 9A.82.010(4).

Linville argues that because these latter offenses are not listed in RCW 9A.82.010(4), RCW 9A.82.085 prohibits the State from joining them in its prosecution against him for leading organized crime. The State responds that the list applies only to acts which occurred outside of the state of Washington.

The State contends that the statute should be read as:

Criminal Profiteering means
(1) any act, including any anticipatory or completed offense, committed for financial gain,

5

> (2) that is chargeable or indictable under the laws of the state in which the act occurred and,
> (3) if the act occurred in a state other than this state, would be chargeable or indictable under the laws of this state had the act occurred in this state and punishable as a felony and by imprisonment for more than one year, regardless of whether the act is charged or indicted, as any of the following: [list of specific felonies]. . . .

Br. of Resp't 14-15.

> Linville contends that the statute should be read as:
>
> Criminal Profiteering means
> (1) any act, including any anticipatory or completed offense, committed for financial gain,
> (2) that is chargeable or indictable under the laws of the state in which the act occurred
>> and, if the act occurred in a state other than this state, would be chargeable or indictable under the laws of this state had the act occurred in this state and punishable as a felony and by imprisonment for more than one year,
> (3) regardless of whether the act is charged or indicted,
> (4) as any of the following: [list of specific felonies]. . . .

Reply Br. of Appellant 2.

Washington courts have agreed with Linville's interpretation of RCW 9A.82.010(4), stating, "'Criminal profiteering' is defined as commission of *specific enumerated felonies* for financial gain." *Trujillo v. Nw Tr. Servs., Inc.*, 183 Wn.2d 820, 837, 355 P.3d 1100 (2015) (emphasis added) (citing RCW 9A.82.0101(4)). And, "'Criminal profiteering' is any act committed for financial gain that is chargeable as one of the *predicate felonies enumerated in RCW 9A.82.010(4).*" *State v. Munson*, 120 Wn. App. 103, 106, 83 P.3d 1057 (2004) (emphasis added).

We note that the State's interpretation of RCW 9A.82.010(4) on appeal conflicts with its position at trial. During its closing argument, the State explained "criminal profiteering" to the jury:

> You get further information in terms of criminal profiteering because *it's only specific types of crimes, right, that qualify for criminal profiteering.* We have theft in the first degree charged multiple times here, theft in the second degree charged multiple times here, trafficking in stolen property in the first degree charged multiple times here, and then identity theft in the second degree, also charged multiple times, and you're well in excess of three for each of those. And it has to be committed for financial gain, whether by an accomplice or the principal, and it includes any attempted or completed commission of those offenses.

30 Verbatim Report of Proceedings (VRP) at 5405-06. At trial, the State clearly understood "criminal profiteering" to mean only those crimes explicitly listed in RCW 9A.82.010(4).

We hold that a plain reading of RCW 9A.82.085 and 9A.82.010(4) make it clear that the State was statutorily barred from joining charges of residential burglary, first degree burglary, second degree burglary, attempted residential burglary, theft of a firearm, third degree theft, unlawful possession of a firearm, and possession of stolen property to Linville's prosecution for leading organized crime.

The unreasonable failure to research and apply relevant statutes without any tactical purpose constitutes deficient performance. *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 102, 351 P.3d 138 (2015). Here, defense counsel's failure to object to the State's improper joinder of charges based on RCW 9A.82.085 and 9A.82.010(4) was unreasonable and constitutes deficient performance.

2. *Counsel's Deficient Performance Resulted in Prejudice*

To succeed on his claim of ineffective assistance of counsel, Linville must also show that but for his counsel's deficient performance the outcome of the trial would have differed, and therefore the deficient performance was prejudicial. *Reichenbach*, 153 Wn.2d at 130. He meets this burden.

We review this issue differently than the related issue of discretionary joinder or severance pursuant to CrR 4.4(b). Under CrR 4.4(b), a trial court must grant a motion to sever offenses if it determines that "severance will promote a fair determination of the defendant's guilt or innocence of each offense." A defendant seeking such a severance bears the burden of demonstrating that a trial involving all counts would be so manifestly prejudicial as to outweigh the concern for judicial economy. *State v. Huynh*, 175 Wn. App. 896, 908, 307 P.3d 788 (2013). Appellate courts review a trial court's denial of a motion to sever under CrR 4.4(b) for manifest abuse of discretion.

In contrast, RCW 9A.82.085 leaves no room for the trial court's discretion. The State is *barred* from joining offenses other than those alleged to be part of the criminal profiteering activity in a prosecution for leading organized crime. As a result, severance of the charges here was mandatory, and severance would have been granted had Linville's counsel brought RCW 9A.82.085 to the trial court's attention.

The State argues that because it had sufficient evidence against Linville to support all of the convictions, Linville would have *eventually* been convicted of all charges. However, our focus in determining whether counsel's deficient performance was prejudicial is on the proceeding at hand; we do not speculate on the potential results of a hypothetical future proceeding. *Reichenbach*, 153 Wn.2d at 130.

When assessing whether counsel's deficient performance was prejudicial, we ask whether *but for* counsel's purportedly deficient conduct would the outcome of *this trial* have differed. *Reichenbach*, 153 Wn.2d at 130. Because of defense counsel's failure to object, Linville was improperly tried for 138 total charges and convicted of 137 offenses. Had counsel properly

objected to the joinder, 56 of the charges, including all of the burglary charges, would have been severed, the trial would not have included convictions for those 56 improperly joined charges, and the outcome of this trial would have been different. *See State v. Jones*, 183 Wn.2d 327, 341, 352 P.3d 776 (2015). Moreover, each of the four firearm enhancements, which resulted in a mandatory minimum sentence of 240 months, were associated with the four counts of first degree burglary, which would not have been considered but for defense counsel's deficient performance.

The improper joinder had additional prejudicial consequences. For example, by improperly joining four charges of unlawful possession of a firearm, the State was permitted to introduce evidence of Linville's prior felony for possession of a controlled substance without a prescription. This prior conviction evidence was highly prejudicial given that the State's theory was that Linville's crime ring was motivated by drugs. *See State v. Acosta*, 123 Wn. App. 424, 438, 98 P.3d 503 (2004). Also, the State relied heavily on the burglaries as evidence of Linville's guilt for leading organized crime. A jury separately considering the burglary charges would not necessarily have heard testimony of Linville's accomplices accusing him of orchestrating a broad scheme.

The State contends that this evidence would have been cross-admissible even if the charges were tried separately. But to admit such evidence the State would bear the burden of proving that the probative value of the evidence would outweigh the prejudice. *See* ER 404, 609. Without any such findings on the record, we have no way to know what would be found admissible or inadmissible in some hypothetical trial. Ultimately, the State's argument requires us to make too many assumptions.

Consequently, we hold that Linville's defense counsel rendered ineffective assistance of counsel by failing to object to the joinder of offenses in violation of RCW 9A.82.085. We reverse Linville's convictions and remand for separate trials.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## ADDITIONAL ANALYSIS

II. SUFFICIENT EVIDENCE PROVES THAT LINVILLE WAS ARMED WITH A FIREARM

Linville next argues that the State presented insufficient evidence to convict him of first degree burglary because the State failed to prove a nexus among the defendant, the weapon, and the crime.[9] We disagree.

"Evidence is sufficient to support a finding of guilt if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *State v. Rose*, 175 Wn.2d 10, 14, 282 P.3d 1087 (2012). "A claim of insufficient evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from that evidence." *State v. Caton*, 174 Wn.2d 239, 241, 273 P.3d 980 (2012). We consider circumstantial and direct evidence to be equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

---

[9] Linville also argues that insufficient evidence supported the firearm sentencing enhancements. However, because we are reversing and remanding, and "sentencing enhancements are not 'offenses' as contemplated by the double jeopardy clause's protection," we need not consider this issue. *See In re Pers. Restraint of Delgado*, 149 Wn. App. 223, 240, 204 P.3d 936 (2009).

First degree burglary requires the State to prove, among other elements, that the defendant was armed with a deadly weapon or assaulted a person. RCW 9A.52.020(l)(a). The statutory definition for "deadly weapon" provides:

> "Deadly weapon" means any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

RCW 9A.04.110(6). "A firearm, whether loaded or unloaded, is a deadly weapon per se." *State v. Hernandez*, 172 Wn. App. 537, 543, 290 P.3d 1052 (2012) (citing *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 365, 256 P.3d 277 (2011)).

For purposes of first degree burglary, defendants are armed with a deadly weapon if a firearm is easily accessible and readily available for use by the defendants for either offensive or defensive purposes. *State v. Brown*, 162 Wn.2d 422, 431, 173 P.3d 245 (2007). When a defendant has actual possession of a firearm, sufficient evidence supports a first degree burglary conviction despite the firearm being unloaded and no evidence showing that the defendant intended to use it. *Hernandez*, 172 Wn. App. at 543–44.

Linville, relying entirely on *Brown*, argues that the State was required to prove that a nexus existed. But *Brown* involved the question of constructive possession as it related to being "armed" for purposes of the firearm sentencing enhancement. *See Brown*, 162 Wn.2d at 434 n.4.

Our decision in *Hernandez* offers a more apt comparison to the facts here. There, a group of burglars committed a series of burglaries, during one of which they took a 20-gauge shotgun. *Hernandez*, 172 Wn. App. at 540. The *Hernandez* court held that the State was not required to prove a nexus between the firearm and the crime because there is no nexus requirement where

11

there is actual possession of a firearm, rather than constructive possession. *Hernandez*, 172 Wn. App. at 544.

Here, there is no dispute that firearms were taken in the course of the burglaries. Therefore, either Linville or his accomplices were in actual possession of the firearms during the commission of the burglary. Linville concedes that guns were stolen during four of the burglaries.[10] This fact is sufficient evidence to support the first degree burglary convictions and the firearm enhancements for the burglary.

Aside from his nexus argument, Linville asserts only that no evidence suggested that anyone involved in the burglary intended or was willing to use the stolen firearms in furtherance of the crime. But "[w]hen first degree burglary involves deadly weapons per se, specifically firearms taken in the course of a burglary, 'no analysis of willingness or present ability to use a firearm as a deadly weapon' is necessary." *Hernandez*, 172 Wn. App. at 543 (internal quotation marks omitted) (quoting *Martinez*, 171 Wn.2d at 367).

Accordingly, we hold that the State presented sufficient evidence that Linville or an accomplice was armed with a deadly weapon for purposes of first degree burglary.

## IV. OTHER ISSUES

Linville makes several additional arguments. He argues that (1) a conviction for the first alternative means of trafficking in stolen property cannot rest on accomplice liability, (2)

---

[10] Additionally, in closing argument, Linville's counsel acknowledged that Linville and his accomplices stole guns during these burglaries, focusing instead only on their use of those guns: "Again, we are not contesting the burglary took place. We're not contesting a substantial tie that would basically at this point find him guilty of that burglary. Find him guilty of the taking of her stuff. Find him guilty of the crime of possession and theft of that firearm, but there's no factor that you can weigh to put it on that he's armed." 31 VRP at 5598.

12

insufficient evidence supported the firearm sentencing enhancements, (3) his constitutional right to a unanimous jury verdict was violated when the trial court instructed the jury that it did not need to reach a unanimous verdict with respect to the means by which it found him guilty of first degree trafficking in stolen property, (4) his 39 convictions for trafficking in stolen property violate his right against double jeopardy, and (5) the trial court erred by allowing the State to amend the charging information after it rested its case, Br. of Appellant 48. Because we otherwise reverse and remand, we do not reach these issues.

_____
Worswick, J.

We concur:

_____
Bjorgen, C.J.

_____
Lee, J.