IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47916-8-II |
| Respondent, | |
| v. | |
| KENNETH ALFRED LINVILLE, JR., | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Kenneth Linville appealed his 137 convictions for leading organized crime, burglary, trafficking in stolen property, theft, possession of stolen property, and unlawful firearm possession.

In our first decision, *State v. Linville*, 199 Wn. App. 461, 400 P.3d 333 (2017), *rev'd* 191 Wn.2d 513, 423 P.3d 842 (2018), we held that Linville received ineffective assistance of counsel based on his counsel's failure to object to the State's improper joinder of charges.  We also held that sufficient evidence proved that Linville was armed with a firearm as related to his conviction for first degree burglary.[1]

The Supreme Court, although agreeing that the State improperly joined Linville's charges, held that Linville did not demonstrate that he received ineffective assistance of counsel. The Supreme Court held that because the record was insufficient to determine whether Linville's counsel had legitimate reasons for remaining silent in the face of the erroneous joinder, Linville failed to show that his counsel had rendered deficient performance.  Accordingly, the Supreme

---

[1] The Supreme Court did not accept this issue for review, and we do not revisit it here.

Court remanded to this court to resolve Linville's other issues. The parties subsequently filed additional briefing, and we heard argument.

We now address Linville's arguments that (1) a conviction based on the first alternative means of trafficking in stolen property cannot rest on accomplice liability, (2) the State presented insufficient evidence to impose the firearm sentencing enhancements, (3) the trial court violated his right to a unanimous jury verdict by instructing the jury that it need not be unanimous as to the means by which it found him guilty of trafficking in stolen property, (4) his multiple convictions for trafficking in stolen property violated the prohibition against double jeopardy, and (5) the trial court denied his right to due process by permitting the State to amend the charging information after the State rested its case.

We hold that sufficient evidence supported the firearm sentencing enhancements, and Linville's convictions for trafficking in stolen property did not violate double jeopardy. But we also hold that the trial court denied Linville his right to due process by permitting the State to amend the charging information after the State rested its case. We further hold that Linville failed to preserve his other arguments for appeal and he does not identify any manifest constitutional errors. Accordingly, we affirm in part but remand to the trial court for the dismissal of count 130 without prejudice.

FACTS

In late 2013, law enforcement noticed an increase in daytime residential burglaries in Thurston County. Law enforcement noticed similarities among the burglaries, including the use of a tool to pry open the front door of the burglarized homes. As a result of their investigation, law enforcement arrested several suspected perpetrators, including Linville.

The State subsequently charged Linville with leading organized crime, 35 counts of residential burglary, attempted residential burglary, 4 counts of first degree burglary while armed with a firearm, 3 counts of second degree burglary, 39 counts of trafficking in stolen property, 17 counts of first degree theft, 18 counts of second degree theft, attempted second degree theft, 3 counts of third degree theft, 5 counts of theft of a firearm, 5 counts of identity theft, 4 counts of unlawful possession of a firearm, possession of stolen property, and possession of a controlled substance, for a total of 138 charges with numerous deadly weapon and firearm sentencing enhancements.

During the ten week trial, the State presented evidence from numerous codefendants who all identified Linville as the ringleader of the burglary scheme.

Jessica Hargrave, Linville's former girlfriend, testified that she and Linville burglarized homes together. She explained that Linville would use a 32-inch screwdriver to pry open the front doors of homes. Hargrave testified that the pair would steal jewelry boxes, safes, televisions, and electronics from the homes. She specifically recalled stealing a firearm from one house. Hargrave recalled that Linville would bring electronics, guns, and jewelry that they stole to David Knutson in exchange for methamphetamines. Hargrave also testified that Sara Myers would also give Linville methamphetamines in exchange for help with bills or stolen electronics or jewelry. Hargrave further testified that she and Linville would separate the gold jewelry and remove any diamonds or jewels. They took the gold to "the gold guy[]," who would buy it from them. 5 Verbatim Report of Proceedings (VRP) at 859. They sold the diamonds to Kluh's Jewelry.

3

Jolee Lafferty testified that she drove Linville to houses he planned to burgle. She described Linville using a crowbar to break into the front doors of homes and later exiting with televisions and jewelry boxes. Lafferty testified that Linville traded the items he stole for money or drugs. Lafferty recalled driving Linville to "the gold guy" and to Myers's residence so Linville could trade the stolen items for drugs and money. 18 VRP at 3281.

Jennifer Krenik testified to burglaries she committed with Linville. Krenik explained that she and Linville entered the homes through the front door, which Linville pried open with a screwdriver. She recalled that after one burglary, when they were back in the car, Linville told her he had stolen a black revolver. She testified that after the burglaries, she and Linville took the items they stole to Knutson's home.

Knutson, who sold drugs to Linville, testified that he routinely purchased stolen goods from Linville with drugs. Knutson recalled exchanging drugs for a used television. Knutson testified that Linville brought stolen goods to his home about once a week, including guns, electronics, jewelry, and laptops and offered to sell them for drugs.

The codefendants' testimonies were corroborated by testimony from law enforcement officers and the burglary victims who testified to the items stolen from their residences and identified the stolen goods recovered from the homes of Linville and his codefendants. Specifically, victims of each of the burglaries associated with a firearm sentencing enhancement testified that firearms were stolen from their homes.

The jury ultimately found Linville guilty of almost all of the offenses,[2] and found that the State proved firearm enhancements on three charges. The trial court sentenced him to 914 months in prison.

Linville appealed to this court, and we held that Linville received ineffective assistance of counsel based on his counsel's failure to object to the State's improper joinder of charges. We also held that sufficient evidence proved that Linville was armed with a firearm during the first degree burglary. The State petitioned for review to our Supreme Court. Our Supreme Court held that because the record was insufficient to determine whether Linville's counsel had legitimate reasons for remaining silent in the face of the erroneous joinder, Linville failed to show that his counsel had rendered deficient performance.[3] Accordingly, the Supreme Court remanded to this court to resolve Linville's other issues.

## ANALYSIS

### I. ISSUES NOT PRESERVED FOR APPEAL

As an initial matter, Linville raises several arguments for the first time on appeal, including (1) the trial court erred by allowing the State to join offenses that were not "part of the pattern of criminal profiteering activity" for trial with the charge of leading organized crime as

---

[2] The jury found Linville not guilty of possession of a controlled substance and also found that the State did not prove any of the deadly weapon enhancements. The State identified the deadly weapon as a pry bar.

[3] Our Supreme Court noted that the appropriate avenue for Linville to raise his ineffective assistance claim, which would require the appellate court to consider facts not in the record, would be a personal restraint petition. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018).

prohibited by RCW 9A.82.085,[4] (2) a conviction for the first alternative means of trafficking in stolen property cannot rest on accomplice liability, and (3) his constitutional right to a unanimous jury verdict was violated when the trial court instructed the jury that it did not need to reach a unanimous verdict with respect to the means by which it found him guilty of first degree trafficking in stolen property.

Generally, an issue cannot be raised for the first time on appeal unless it is a "manifest error affecting a constitutional right." RAP 2.5(a); *State v. Lamar*, 180 Wn.2d 576, 582, 327 P.3d 46 (2014). This requires an appellant to identify a constitutional error and show how the alleged error affected his rights at trial. *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). For a claim of error to qualify as a claim of manifest error affecting a constitutional right, the appellant must make a plausible showing that the error resulted in actual prejudice, which means that the alleged error had "practical and identifiable consequences in the trial." *Lamar*, 180 Wn.2d at 583. To determine whether an appellant makes this showing, we may preview the merits of the claimed errors to determine whether the argument is likely to succeed. *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001).

A.      *Improper Joinder*

Joinder of offenses that are not part of the pattern of criminal profiteering activity is prohibited by statute. RCW 9A.82.085. Linville did not raise this issue at trial, but he argues that we should nonetheless review the joinder issue because "RCW 9A.82.085 represents a legislative conclusion that a joint trial for leading organized crime and offenses which do not

---

[4] We previously addressed this issue in footnote seven of our prior decision, but we address it again in more detail here. *Linville*, 199 Wn. App. at 465.

constitute a part of the pattern of criminal profiteering activity is manifestly unfair," and "[a]

manifestly unfair trial deprives a defendant of due process in violation of the Fourteenth

Amendment." Br. of Appellant 17 (citing *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d

1213 (1984)). However, Linville's argument here is flawed for two reasons.

First, Linville merely assumes without authority that the legislature's rationale for RCW

9A.82.085 was based on constitutional fair trial rights. Second, the argument assumes that any

type of failure to preserve an issue for appeal which allegedly renders a trial "unfair" would

constitute a constitutional violation of due process rights. This is not the rule. The rule against

joinder here is rooted in statute. Because Linville cannot show that the improper joinder

constituted a constitutional error, we do not address this issue for the first time on appeal.

B.      *Accomplice Liability for Trafficking in Stolen Property*

Linville argues that a conviction for the first alternative means of trafficking in stolen

property cannot rest on accomplice liability, and because the "to convict" jury instruction

permitted convictions based on accomplice liability, his 39 convictions of trafficking must be

reversed. Br. of Appellant 26

The Washington statute defining accomplice liability provides that a person is guilty as

an accomplice if he "solicits, commands, encourages, or requests" another person to commit a

crime or aids another person in planning or committing the crime, knowing that such act will

promote or facilitate the commission of the crime. RCW 9A.08.020(3)(a)(i). Nothing in the text

of this statute limits the application of accomplice liability principles to any particular crime.

However, our courts have recognized that "it is sometimes apparent from the way the legislature

has defined a particular crime that traditional accomplice liability provisions are not applicable to

that crime." *See State v. Hayes*, 164 Wn. App. 459, 469, 262 P.3d 538 (2011) (*abrogated on other grounds recognized in State v. Colson*, No. 73798-8-II (Wash. Ct. App. Mar. 27, 2017) (unpublished) (http://www.courts.wa.gov/opinions/index.cfm?fa=opinions.showOpinion&filename=737988M AJ).

We review the construction of a statute de novo. *Hayes*, 164 Wn. App. at 469. Our primary objective of an inquiry into the construction of a statute is to ascertain and carry out the intent of the legislature. *Hayes*, 164 Wn. App. at 469.

A person is guilty of first degree trafficking in stolen property when he (1) knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or (2) knowingly traffics in stolen property. RCW 9A.82.050; *State v. Owens*, 180 Wn.2d 90, 97-98, 323 P.3d 1030 (2014). Linville contends that accomplice liability cannot apply to the first alternative of trafficking in stolen property via accomplice liability because it is "supervisory" in nature. Br. of Appellant 24

Linville relies on *Hayes* to support his claim. 164 Wn. App. at 459. However, *Hayes* is distinguishable. Hayes was convicted of leading organized crime. 164 Wn. App. at 466. The court in *Hayes* explained that leading organized crime

> is committed by leading three or more other persons in a pattern of criminal profiteering activity. While guilt for the crime is predicated on group conduct, the conduct criminalized by the statute is the conduct of the leader. The participation required by the accused is *leading* three or more followers by organizing, managing, directing, supervising, or financing them. There must be a hierarchy in which the defendant is at the apex and three or more other persons are below.

164 Wn. App. at 470 (emphasis added).  Consequently, the *Hayes* court held that by instructing the jury on accomplice liability, the State was impermissibly relieved of its burden to prove that Hayes was a *leader* of organized crime.  164 Wn. App. at 469-71.

In contrast, the trafficking stolen property statute does not require any such "hierarchy in which the defendant is at the apex."  *Hayes*, 164 Wn. App. at 470.  Indeed, the statute does not require the participation of more than one person at all.  *Owens*, 180 Wn.2d at 100 (holding that a single person can "plan" or "initiate" under the plain meaning of RCW 9A.82.050).  Nothing in the statute's text suggests that accomplice liability is inapplicable in cases of trafficking in stolen property.  Consequently, we hold that the trafficking stolen property statute does not prohibit accomplice liability and, therefore, the alleged error does not constitute a manifest constitutional error.

C.      *Unanimity of Trafficking in Stolen Property Convictions*

Linville argues that his constitutional right to a unanimous jury verdict was violated when the trial court instructed the jury that it need not reach a unanimous verdict with respect to the means by which it found him guilty of first degree trafficking in stolen property.

Our Supreme Court recently addressed essentially identical jury instruction language in *State v. Armstrong*, 188 Wn.2d 333, 394 P.3d 373 (2017).  Acknowledging that "an instruction on jury unanimity as to the alternative method found is preferable," the *Armstrong* court expressly rejected Armstrong's argument and held that instructing "the jury that it need not be unanimous as to which of the two means it relied on, so long as it was unanimous as to the conviction," was "a correct statement of the law."  188 Wn.2d at 344, 336.  As clarified in

9

*Armstrong*, Washington courts will uphold unanimous jury verdicts based on alternative means if substantial evidence supports each of the alternate means. 188 Wn.2d at 340.

After a careful review of the record, we hold that when viewing the evidence in the light most favorable to the State sufficient evidence supports each of the alternative means of first degree trafficking in stolen property and, therefore, Linville does not raise a manifest constitutional error.

## II. FIREARM SENTENCING ENHANCEMENTS

Linville argues that the State produced insufficient evidence to support the imposition of firearm sentencing enhancements. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence, and the court views the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Cardenas-Flores*, 189 Wn.2d at 265-66. These standards apply to firearm sentencing enhancements. *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 826, 425 P.3d 807 (2018).

RCW 9.94A.533(3) increases the sentence for an underlying felony "if the offender or an accomplice was armed with a firearm" during the course of that crime. A defendant is armed for the purposes of the statute if (1) the weapon was readily accessible and easily available, and (2) there is a nexus between the defendant, the crime, and the weapon. *State v. Easterlin*, 159 Wn.2d 203, 206, 149 P.3d 366 (2006). "[T]he mere presence of a deadly weapon at the scene of

10

the crime, mere close proximity of the weapon to the defendant, or constructive possession alone is insufficient to show that the defendant is armed." *State v. Brown*, 162 Wn.2d 422, 431, 173 P.3d 245 (2007). However, when the defendant had actual possession of the weapon during the commission of the crime, proof of a nexus between the weapon and the crime usually is unnecessary. *State v. Hernandez*, 172 Wn. App. 537, 544, 290 P.3d 1052 (2012).

Linville relies on *Brown* to argue that the State was required to show a nexus between the weapon and the crime and that the State must specifically show that Linville had an intent or willingness to use the firearms to further the burglaries. But *Brown* is distinguishable from the facts of this case. There, Brown and an accomplice burglarized a home but did not remove anything from the house. *Brown*, 162 Wn.2d at 426. When the victim returned to his home, he noticed that his unloaded rifle had been moved from the closet to his bed. *Brown*, 162 Wn.2d at 426. Our Supreme Court reversed Brown's first degree burglary charge and firearm sentencing enhancement holding that insufficient evidence showed a nexus between Brown's *constructive possession* of the rifle and the crime. *Brown*, 162 Wn.2d at 435.

Here, taking the evidence in the light most favorable to the State, the record reflects that Linville or an accomplice had *actual possession* of a firearm at the time of the burglaries. Victims of each of the burglaries associated with a firearm sentencing enhancement testified that firearms were stolen from their homes, and Linville's accomplices testified to Linville's actual possession of a stolen firearm in two of the burglaries. Accordingly, we hold that there is sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Linville was armed with a firearm for the purpose of the firearm sentencing enhancement.

### III. DOUBLE JEOPARDY

Linville argues that his 39 convictions for trafficking in stolen property violate his right against double jeopardy. We disagree.

The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution prohibit double jeopardy. The prohibition on double jeopardy includes that a person cannot receive multiple punishments for the same offense. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014). Determining whether Linville's convictions constitute multiple punishments for the same offense requires determination of legislative intent and presents a question of statutory interpretation. *Villanueva-Gonzalez*, 180 Wn.2d at 980. We review alleged violations of double jeopardy de novo. *Villanueva-Gonzalez*, 180 Wn.2d at 979-80.

When a defendant has multiple convictions under the same statutory provision, as here, we apply the "unit of prosecution" analysis that asks what act or course of conduct the legislature has defined as the punishable act. *Villanueva-Gonzalez*, 180 Wn.2d at 980-81. "In applying the unit of prosecution analysis, courts look to discern 'the evil the legislature has criminalized.'" *State v. Novick*, 196 Wn. App. 513, 522, 384 P.3d 252 (2016) (quoting *State v. Hall*, 168 Wn.2d 726, 731, 230 P.3d 1048 (2010)). Our focus is on the actual act necessary to commit the crime. *Novick*, 196 Wn. App. at 522. We review unit of prosecution issues on appeal de novo. *State v. O'Brien*, 164 Wn. App. 924, 928-29, 267 P.3d 422 (2011).

The first step in a unit of prosecution analysis is to analyze the statute in question. *State v. Jensen*, 164 Wn.2d 943, 949, 195 P.3d 512 (2008). When we interpret a statute, our fundamental objective is to determine and give effect to the legislature's intent. *State v. Larson*, 184 Wn.2d

843, 848, 365 P.3d 740 (2015). We look first to the statute's plain language to determine this intent. *Larson*, 184 Wn.2d at 848. We discern the plain meaning of a statutory provision from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. *State v. Polk*, 187 Wn. App. 380, 389, 348 P.3d 1255 (2015). In satisfying the intent of the statute, a reading that produces absurd results must be avoided because it will not be presumed that the legislature intended absurd results. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

A person is guilty of first degree trafficking in stolen property if he knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property. RCW 9A.82.050. In this context, "traffic" means "to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person." RCW 9A.82.010(19).

Linville contends that the proper unit of prosecution for trafficking in stolen property is the course of conduct and, therefore, he could only be convicted of one count of trafficking in stolen property. We disagree.

The plain language of RCW 9A.82.050 makes it clear that the operative criminal act prohibited by RCW 9A.82.050 is either (1) the knowing facilitating or participating in the theft of property so that it can be sold, or (2) transferring possession of property known to be stolen, depending on which alternative means by which the crime is committed. *State v. Lindsey*, 177 Wn. App. 233, 241-42, 311 P.3d 61 (2013); RCW 9A.82.050, .010(19). Stated another way, the "evil the legislature has criminalized" is either the knowing facilitation or participation in the theft

in order to sell stolen property, or the transfer of possession of property known to be stolen. *See Hall*, 168 Wn.2d at 731.

Furthermore, Linville's interpretation leads to an absurd result. Under Linville's unit of prosecution analysis, a defendant could only ever be charged with one count of trafficking. Such a result would be absurd in a situation where, as here, the defendant's conduct included multiple thefts, multiple victims, and multiple sales of stolen goods over a long period of time.

The plain language of the statute supports the conclusion that the unit of prosecution for trafficking in stolen property is each separate act of knowing facilitation or participation in a theft for the purpose of selling the stolen property or each transfer of property known to be stolen.[5]

Having determined the unit of prosecution, we next perform a factual analysis to determine if, under the facts of the specific case, more than one unit of prosecution is present.

---

[5] Linville also argues that if the unit of prosecution is taking the property, then theft and trafficking in stolen property are the same offense and double jeopardy requires the dismissal of each of the theft charges. However, Linville's contention is without merit because the unit of prosecution includes the requisite intent element of knowing participation in the theft to facilitate the sale of stolen property thereafter. Linville cites *State v.* Walker for support, but in *Walker*, we distinguished between theft and trafficking in stolen property for double jeopardy purposes precisely along these lines. 143 Wn. App. 880, 886, 181 P.3d 31 (2008). The *Walker* court explained:

> Most importantly, the intent elements differed: (1) for theft, the State had to prove Walker intended to deprive the owner of its property; while (2) for trafficking, the State had to prove Walker intended to sell or dispose of another's property to a third party. A person could steal (i.e., intend to deprive an owner) of its property without intending to sell or dispose of that property to a third party and could sell property to another knowing that it was stolen without having been the thief.

*Walker*, 143 Wn. App. at 887.

*Hall*, 168 Wn.2d at 730. Factors that can be considered in addressing whether each act is a separate or distinct violation include the method used to commit the crime, the amount of time between the acts, and whether the initial conduct was interrupted, failed, or abandoned. *State v. Boswell*, 185 Wn. App. 321, 332, 340 P.3d 971 (2014).

Linville argues that his actions constituted a single course of conduct of engaging in the marketplace of stolen property, and as such that he should have been charged with only one count of trafficking. We disagree.

Washington courts faced similar issues in *State v. Reeder*, 184 Wn.2d 805, 365 P.3d 1243 (2015). There, Reeder appealed his convictions for 14 counts of first degree theft, arguing that because his actions were all done with one continuing impulse, he should have only been charged with one count. *Reeder*, 184 Wn.2d at 828-29. Our Supreme Court rejected his argument, holding that because each count was based on a separate and distinct transaction that occurred at a separate time, it was within the prosecuting attorney's discretion to charge Reeder with multiple counts. *Reeder*, 184 Wn.2d at 829-30.

The facts of this case are similar to *Reeder*, 184 Wn.2d at 805. Although Linville's actions were somewhat repetitious, they were by no means continuous or identical. *See State v. Tili*, 139 Wn.2d 107, 124, 985 P.2d 365 (1999) (Holding that where crimes are sequential and not simultaneous or continuous, such that the defendant is able to form a new criminal intent before the second criminal act, the criminal intent, objectively viewed, changes from one act to the next.). Linville burglarized many different homes over the course of several months. For each burglary, Linville plotted a scheme to burglarize that particular home and coordinated with

his accomplices. Additionally, Linville paid numerous visits to pawn shops, jewelers, and various individuals to sell the stolen goods for drugs or money.

Based on this analysis, we hold that Linville's 39 convictions for trafficking in stolen property do not violate double jeopardy principles because he was not charged multiple times for the same offense. Rather, each count was based on evidence of 39 distinct times that Linville's conduct violated the statute.

## IV. LATE AMENDMENT

Finally, Linville argues that the trial court erred by allowing the State to amend the charging information after it rested its case. We agree.

Article I, section 22 of our State Constitution mandates that all essential elements of a charged crime be included in the charging document. *State v. Quismundo*, 164 Wn.2d 499, 503, 192 P.3d 342 (2008). If the State fails to meet the requirements of the essential elements rule in the original information, it may move to amend the information. *State v. Schaffer*, 120 Wn.2d 616, 621, 845 P.2d 281 (1993). The court may permit the State to amend the information at any time if substantial rights of the defendant are not prejudiced. CrR 2.1(d). However, once the State has rested, any amendment other than an amendment to a lesser charge is a per se violation of the defendant's constitutional rights unless the amendment is to a lesser degree of the same crime or a lesser included offense. *State v. Vangerpen*, 125 Wn.2d 782, 789-91, 888 P.2d 1177 (1995). We review a trial court's decision to allow the State to amend a charge for abuse of discretion. *Quismundo*, 164 Wn.2d at 504.

After resting its case in chief, the State amended the charging information twice. First the State filed a sixth amended information which amended count 130 from second degree theft

to first degree theft. Later, the State filed a seventh amended information correcting the designation of count 130 from a class C felony to a class B felony.

In its brief, the State focuses exclusively on the last amendment and argues that the amendment was nothing more than correcting a scrivener's error and as such did not violate Linville's constitutional rights. However, the State ignores that the sixth amended information, which occurred after the State had rested its case, charged a higher degree of theft. Amending the information to charge a higher degree of the offense after the State has rested its case constitutes "reversible error per se even without a defense showing of prejudice." *State v. Markle*, 118 Wn.2d 424, 437, 823 P.2d 1101 (1992); *see also Quismundo*, 164 Wn.2d at 504.

At oral argument, the State also argued that the late amendment here was not per se prejudicial because Linville was aware of the proposed amendment before the State rested its case. The State relies on our opinion in *State v. Hockaday*, 144 Wn. App. 918, 184 P.3d 1273 (2008). But *Hockaday* is factually distinguishable. There, we held that a late amendment was not per se reversible error where the defendant was aware of the State's intent to amend the information before the State rested its case and agreed to the amendment. *Hockaday*, 144 Wn.2d at 926-27. The State argues that Linville similarly knew about its intention to amend the information, but the record on appeal does not support the State's contention. The record shows that the State spoke to defense counsel about the amended information on the morning it moved to amend. But the State had rested its case the previous day. And the State's discussion with defense counsel about the amendment is not the same as a defendant agreeing to an amendment. Thus, the State's reliance on *Hockaday* is unavailing.

No. 47916-8-II

The proper remedy for this per se prejudicial error is to remand to the trial court for the dismissal of the conviction on count 130 without prejudice. *Quismundo*, 164 Wn.2d at 504.

In conclusion, we affirm in part but remand to the trial court for the dismissal of count 130 without prejudice.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

Lee, C.J.

Cruser, J.

18