

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37281-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASON M. HIROCKE, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37282-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JASON M. HIROCKE, | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Jason Hirocke was charged with multiple felonies under two cause numbers. To resolve all of these charges, he waived numerous constitutional rights, signed a drug court contract, and agreed to enter drug court. After repeated violations, Mr. Hirocke was terminated from drug court and convicted of all the charges following a

stipulated bench trial. Mr. Hirocke appeals, contending that his waiver of a jury trial was invalid because the drug court contract is illusory. He also argues that his multiple convictions for trafficking in stolen items violate double jeopardy. In a supplemental brief, he contends that his one conviction for possession of a controlled substance should be reversed following the Supreme Court's decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). For purposes of this opinion only, we are consolidating these cases.

FACTS

On March 18, 2016, Mr. Hirocke was charged with one count of second degree burglary and four counts of trafficking in stolen property in the first degree. (37281-2-III). The State alleged that while Mr. Hirocke was renting a storage unit, he removed wall panels to access an adjacent storage unit and stole a significant amount of tools. Mr. Hirocke then pawned some of these tools in four separate transactions.

While these charges were pending, Mr. Hirocke was arrested and charged with possession of a controlled substance under superior court case number 16-1-04328-4. (37282-1-III).

Mr. Hirocke expressed a desire to enter drug court. On April 26, 2017, prior to admitting Mr. Hirocke into drug court, the State amended the information in cause number 16-1-04328-4 to add four counts of forgery and one count of unlawful possession of payment instruments. (37282-1-III) Mr. Hirocke entered pleas of not guilty to the new charges and presented the court with paperwork to enter drug court.

2

Mr. Hirocke's attorney explained to the court that he had previously reviewed the drug court waivers and contract with Mr. Hirocke and that he was "comfortable and confident that [Mr. Hirocke] understands the nature of the rights that he's giving up in order to fully participate in drug court." Report of Proceedings (37282-1-III) at 8. In exchange for giving up these rights, the State agreed to dismiss all of the charges if Mr. Hirocke completed the drug court program.

The drug court contract required Mr. Hirocke to participate in treatment and community-based recovery support groups, abstain from using controlled substances or alcohol, and attend court hearings. The contract also listed several non-exclusive violations that could result in termination from drug court, and provided that "[t]he decision whether or not to terminate an individual from the Drug Court Program rests solely with the Drug Court Judge, guided by input from the Drug Court Team." Clerk Paper's (37282-1-III) at 7-10.

Before admitting him into drug court, the trial court reviewed the drug court waivers and contract with Mr. Hirocke. While explaining the termination procedure, the court made the following comments:

> THE COURT: Excellent. Sir, the document finishes up by talking about the termination policy. Termination becomes an issue if there are allegations that the participant is not complying with all those conditions and requirements.
>
> We don't jump to a termination hearing the first time somebody misses something, it does not work like that. But if there are repeated

violations or allegations of violations or something pretty serious, then we would set a termination hearing.

Termination hearings are formal. They are here in the courtroom on the record. We don't figure it out in staffing. We don't do it informally like our review hearings. The attorneys are here, the court reporter is here. I would hear argument from both sides. I would hear from treatment as to what the recommendations are. I would hear from the person who is at issue at that hearing, and then have to make a determination or decision.

If the decision is made that the violations were committed, that they were willful and intentional, and that they were serious enough or repeated enough, then the person is terminated from the drug court program.

What that means then, because you have given up your rights in this matter, is that you don't go back to the trial docket, you don't have a trial with witnesses and juries and lawyers making motions. It is simply a matter of the judge, usually me, maybe somebody else, simply looking at the affidavits in the file and the police reports to determine if you are guilty of these matters. Do you understand that.

THE DEFENDANT: Yes, I do.

THE COURT: Okay. So you're giving up a whole lot to get into this program. I just want to make sure that's clear to you. So thank you for that.

RP (37281-2-III) at 11-12. Mr. Hirocke was then admitted into the drug court program.

Thirty months later, after repeated violations and a last-chance reinstatement, the court held a termination hearing. The State moved to have Mr. Hirocke terminated from drug court and Mr. Hirocke, through his attorney, asked to remain in the program. The court found that the program had offered Mr. Hirocke all the opportunities and patience it

4

had to offer but that Mr. Hirocke was not amenable to the treatment offered through drug court.  RP (37282-1-III) 47-48.

After terminating Mr. Hirocke from the drug court program, the court conducted a stipulated bench trial and found Mr. Hirocke guilty on all counts.

ANALYSIS

1.  Was the drug court contract invalid as illusory?

In both cases on appeal, Mr. Hirocke argues that the drug court contract he signed, including all of the constitutional waivers, is illusory because the judge retained sole discretion to determine if the contract had been violated, and could find a violation arbitrarily, for any reason, and at its sole discretion.  We review under a de novo standard the validity of a constitutional waiver.  *State v. Treat*, 109 Wn. App. 419, 427, 35 P.3d 1192 (2001).

In framing this issue on appeal, there are a couple of points worth mentioning. First, Mr. Hirocke did not object to the contract terms, the constitutional waivers, the revocation, or the bench trial.  On appeal, he argues that the State's obligation under the contract is illusory because the trial court retains sole discretion to determine a violation and termination.  Mr. Hirocke is not claiming that he complied with his obligations or the State violated its obligations.  Nor is he arguing that, as applied in this case, the court abused its discretion or acted arbitrarily in terminating his contract.  Instead, Mr. Hirocke

is making a facial challenge to the contract; arguing that since it *could* be arbitrarily terminated, it is therefore illusory.

We disagree. Even assuming that Mr. Hirocke has not waived these arguments by failing to make any objections below, the drug court contract is not illusory. A "'promise' may be illusory because it is so indefinite that it cannot be enforced, or because provisions contained in the promise make its performance optional or entirely discretionary on the part of the promisor." *State v. E.A.J.*, 116 Wn. App. 777, 784, 67 P.3d 518 (2003).

Mr. Hirocke argues that the drug court contract is illusory because the State's obligation to dismiss the charges is entirely optional, and the State can choose to terminate a participant for any reason. The drug court contract provided several non-exclusive examples that could cause termination from the drug court program, including the failure to attend or participate in treatment and repeated positive drug tests. The contract specifies that the decision to terminate an individual from drug court rests solely with the judge, guided by input from the drug court team. Mr. Hirocke argues that "[t]hese provisions allow the court to unilaterally and arbitrarily terminate a person from drug court for virtually any reason." Br. of Appellant (37281-2-III) at 9.

In this case, the trial court found that after two-and-a-half years, numerous in-patient treatment stays, mental health treatment, and significant counseling, Mr. Hirocke was still not progressing in treatment and still testing positive for controlled substances.

Mr. Hirocke himself admitted to a recent relapse.  The court noted that Mr. Hirocke was not amenable to any treatment that could be provided through drug court and terminated him from the program.

Mr. Hirocke does not challenge these findings on appeal.  He does not argue that the findings were unsupported by the evidence.  Nor does he argue that the reasons are insufficient to justify termination under the contract's explicit terms.  Mr. Hirocke's termination from drug court was not arbitrary.  Instead, it was supported by the terms of the contract that he signed after advice from counsel.[1]

Contrary to Mr. Hirocke's argument, neither the State nor the court have unfettered discretion to avoid the obligations set forth in the contract.  Drug court contracts are guided by statute and due process.  *See* RCW 2.28.170.  A defendant's stipulation in exchange for the State granting participation in the drug court program is a knowing and intelligent waiver of all subsequent factual, legal, or procedural issues the defendant might raise.  *State v. Varnell*, 137 Wn. App. 925, 930, 155 P.3d 971 (2007) (Court upheld drug court agreement validly waiving procedural and constitutional rights upon entry and defendant's exercise of his right to terminate the program did not implicate due process concerns).  A defendant's incentive for participating in the program in compliance with the State's terms is dismissal of the charges.  *State v. Drum*, 143 Wn.

7

App. 608, 616-17, 181 P.3d 18 (2008), *aff'd on other grounds*, 168 Wn.2d 23, 225 P.3d

237 (2010). These two sets of promises for performance establish consideration for the

drug court contract.

The State retains discretion over admittance to the program and prosecutorial

decisions. *State v. DiLuzio*, 121 Wn. App. 822, 829-30, 90 P.3d 1141 (2004). When the

State seeks to terminate an individual's participation in drug court, the State must prove

non-compliance with the drug court diversion agreement to the neutral fact-finder by a

preponderance of the evidence. *Varnell*, 137 Wn. App. at 929. The State cannot

terminate drug court participation without (1) giving the defendant notice and an

opportunity to contest the basis of the termination, and (2) creating a record of the

evidence relied on to terminate participation. *State v. Cassill–Skilton*, 122 Wn. App. 652,

658, 94 P.3d 407 (2004).

The trial court's function in evaluating the State's drug court termination motion is

similar to evaluating alleged probation violations. *Id*. at 657–58. The decision to revoke

probationary status rests in the sound discretion of the trial court. *State v. Kuhn*, 81

Wn.2d 648, 650, 503 P.2d 1061 (1972). Sound discretion does not mean arbitrary. The

trial's court's discretion is not unfettered.

---

[1] To the extent Mr. Hirocke makes a facial challenge to the drug court contract, by arguing that other reasons, not listed in the contract and not applied in this case, create indefinite obligations, we decline to consider this argument.

Mr. Hirocke also argues that the drug court contract is illusory because the court retained complete discretion to terminate the contract. By making this argument, Mr. Hirocke is conflating the state and the court. A promise may be illusory if performance is "entirely discretionary *on the part of the promisor*." *E.A.J.*, 116 Wn. App. at 784 (emphasis added). In this case, the State is the promisor. The State does not have the discretion to terminate the drug court contract. The court retains this discretion, but the court is not a party to the contract. The court is the sole decider of whether the parties have complied with the contract, just as in all disputes brought before the court. But saying that the court has sole discretion to decide the issue is not the same as saying that the court has unfettered discretion.

The drug court contact was not illusory as applied in this case. In exchange for the State's promise to dismiss all of the charges if he complied with the drug court contract, Mr. Hirocke made a knowing, intelligent, and voluntary waiver of his constitutional rights after conferring with his attorney and being advised by the court. His waivers are valid.

2. Do Mr. Hirocke's multiple convictions for trafficking in stolen property violate double jeopardy?

Pertaining to his appeal in No. 372812, Mr. Hirocke contends that his multiple convictions for trafficking in stolen property violate double jeopardy. Specifically, he argues that pawning stolen property from one burglarized storage unit on four different

9

occasions constitutes an ongoing course of conduct that supports only one unit of prosecution. The State responds that the crime of trafficking in stolen property is an alternative means crime that can be committed by either participating in a theft for the purpose of selling the stolen property or transferring property known to be stolen. Under the second alternative, each transfer of property is a separate unit of prosecution. Thus, Mr. Hirocke's four transactions support his four convictions.

Although Mr. Hirocke did not raise this issue below, a claim of double jeopardy is a manifest error affecting a constitutional right and can be raised for the first time on appeal. RAP 2.5(a)(3); *State v. Bobic*, 140 Wn.2d 250, 257, 996 P.2d 610 (2000).

The double jeopardy clause of the Washington State Constitution, article I, section 9, and the Fifth Amendment to the United States Constitution "'protect against multiple punishments for the same offense.'" *State v. Graham*, 153 Wn.2d 400, 404, 103 P.3d 1238 (2005). A defendant may face multiple charges arising from the same conduct, but double jeopardy forbids entering multiple convictions for the same offense. *State v. Michielli*, 132 Wn.2d 229, 238–39, 937 P.2d 587 (1997).

When faced with multiple violations of the same statute, we apply the "unit of prosecution" test to determine a double jeopardy issue. *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998). We focus on the particular evil the legislature is criminalizing and the actual act necessary to commit the crime. *State v. Novick*, 196 Wn. App. 513, 522, 384 P.3d 252 (2016). Our goal is to determine the criminal conduct or

10

unit of prosecution that the legislature intended to be a punishable act. *State v. Tvedt*, 153

Wn.2d 705, 710, 107 P.3d 728 (2005).

> [T]he first step is to analyze the statute in question. Next, we review the statute's history. Finally, we perform a factual analysis as to the unit of prosecution because even where the legislature has expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one "unit of prosecution" is present.

*State v. Varnell*, 162 Wn.2d 165, 168, 170 P.3d 24 (2007).

Turning first to the statute, we evaluate whether the legislative intent is clear from

the plain language by considering the text of the provision in question, the context of the

statute in which the provision is found, related provisions, and the statutory scheme as a

whole. *State v. Dennis*, 191 Wn.2d 169, 172-73, 421 P.3d 944 (2018). When the words

in a statute are clear and unequivocal, the court must apply the statute as written.

*Michielli*, 132 Wn.2d at 237.

Trafficking in stolen property is an alternative means crime; it can be committed

by either facilitating the theft of property in order to sell it to others or by trafficking, i.e.,

receiving or transferring property known to be stolen. RCW 9A.82.050.[2] Mr. Hirocke

was convicted under the second alternative means. The term "traffic" is further defined

as "to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to

---

[2] RCW 9A.82.050: "A person who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property, is guilty of trafficking in stolen property in the first degree."

11

another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person." RCW 9A.82.010(19).

The crime of trafficking focuses on the transfer of stolen property. The statute's plain language supports a conclusion that each separate transaction is a separate unit of prosecution.

Mr. Hirocke argues that the legislature intended the unit of prosecution for trafficking to be a continuing course of conduct. In support of this argument, he cites *State v. Ose*, 156 Wn.2d 140, 146, 124 P.3d 635 (2005). In *Ose*, the court addressed the unit of prosecution for possession of stolen property. The statutory definition included possessing "a stolen access device." RCW 9A.56.160(1)(c). The court found that the use of the indefinite article "a" in the clause "a stolen access device" clearly demonstrated an intent to create a unit of prosecution for each singular access device. *Ose*, 156 Wn.2d at 146. Mr. Hirocke uses *Ose* to make the inverse argument: since the trafficking statute does not use a singular article to describe property, the legislature must have intended a continuing course of conduct.

This argument denies the antecedent and fails to recognize the difference between possessing stolen property and trafficking stolen property. Trafficking is clearly focused on the transfer as opposed to the possession of the stolen property. Similarly, trafficking can be distinguished from theft.

12

In *State v. Michielli*, the defendant stole items from a house where he was a tenant and then pawned the items to two different pawn shops. 132 Wn.2d at 237. He challenged his convictions for theft and three counts of trafficking in stolen property, arguing that he could not be charged with both theft and trafficking. The court disagreed, noting that transferring stolen property to another is an element of trafficking but not theft. *Id*. at 236 (citing *State v. Strohm*, 75 Wn. App. 301, 879 P.2d 962 (1994)). "Under the plain language of the trafficking statute, one who knowingly sells stolen property can be charged with trafficking, regardless of whether that person is the one who stole the property, and regardless of whether the person sells the property to a fence or an unsuspecting purchaser." *Id*. at 237.

Mr. Hirocke points out that the trafficking crime includes possession of stolen items with the intent to transfer. He contends that since a person who possesses and then transfers stolen property is guilty of only one crime, the legislature must have intended the unit of prosecution to be a continuing course of conduct. Possessing stolen property with intent to transfer and actually transferring the stolen property are alternative means of committing a trafficking offense. RCW 9A.82.010(19). The hypothetical posed by Mr. Hirocke is not before us, and we will not provide an advisory opinion on the unit of prosecution under this scenario.

13

In this case, each transfer of stolen property caused harm to stores that unknowingly purchased stolen property from Mr. Hirocke.  The plain language of the trafficking statute supports the conclusion that when trafficking of stolen property is based on the transfer of property to another, the unit of prosecution is each transfer.

This does not end the inquiry, however.  We must also conduct a factual analysis to decide if more than one unit of prosecution is present in this particular case.  "Even where the Legislature has expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one 'unit of prosecution' is present."  *State v. Bobic*, 140 Wn.2d 250, 266, 996 P.2d 610 (2000).  We have no problem concluding that the facts in the case support four convictions for trafficking in stolen property.  Mr. Hirocke transferred stolen property four separate times.  Each transfer supports a separate conviction.  Double jeopardy has not been violated by Mr. Hirocke's multiple convictions for multiple counts of trafficking in stolen property.

> 3.  Should Mr. Hirocke's conviction for possession of a controlled substance be reversed in light of *State v. Blake*?

While this appeal was pending, the Supreme Court decided *State v. Blake*, 197 Wn.2d 170.

Mr. Hirocke was granted permission to supplement his brief and challenge his one conviction for possession of a controlled substance.  The State concedes that the

14

conviction should be reversed in light of *Blake*. We accept the State's concession and reverse this conviction. His remaining convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.